# Exhibit 1

Return Date: No return date scheduled
Hearing Date: 7/18/2019 10:00 AM - 10:00 AM
Courtroom Number: 2302
Location: District 1 Court
　　　　　Cook County, IL

FILED
3/20/2019 12:54 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH03620

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

RAVEN FOX, individually, and on behalf of all )
others similarly situated, )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　　　　　)　　Case No.　2019CH03620
　　　　v. )
　　　　　　　　　　　　　　　　　　　　　　)
DAKKOTA INTEGRATED SYSTEMS, LLC ）　　**JURY TRIAL DEMANDED**
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Defendant. )

## CLASS ACTION COMPLAINT

Plaintiff Raven Fox ("Plaintiff" or "Fox"), by and through her attorneys, individually and

on behalf of all others similarly situated (the "Class"), brings the following Class Action Complaint

pursuant to the Illinois Code of Civil Procedure 735 ILCS §§ 5/2-801 and 2-802, against Dakkota

Integrated Systems, LLC ("Dakkota" or "Defendant"), their subsidiaries and affiliates, to redress

and curtail Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's sensitive

and proprietary biometric data. Plaintiff alleges as follows upon personal knowledge as to herself,

her own acts and experiences and, as to all other matters, upon information and belief, including

investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.　　　Defendant Dakkota is an automotive supplier that manages the assembly and

sequencing of integrated automotive interiors for original equipment manufacturers. Dakkota has

locations throughout the Midwest, including a location in Chicago.

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

2.     When Dakkota hires an employee, her or she is enrolled in its third-party employee database(s). Dakkota uses the employee database to monitor the time worked by Dakkota's hourly employees.

3.     While many employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Dakkota employees are required to have their hand geometry scanned by biometric timekeeping device.

4.     Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Defendant's – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

5.     Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – one's hand geometry is a set of unique, permanent biometric identifiers associated with each employee. This exposes Dakkota's employees to serious and irreversible privacy risks. For example, if a database containing hand geometry scans or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels, and Facebook/Cambridge Analytica data breaches or misuses – employees have **_no_** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

6.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* https://www.opm.gov/cybersecurity/cybersecurity-incidents.

7.      A black market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259f138.

8.      In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

9.      Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect and store Illinois citizens' biometrics, such as hand geometry.

10.      Notwithstanding the clear and unequivocal requirements of the law, Defendant disregards Dakkota employees' statutorily protected privacy rights and unlawfully collects, stores, disseminates, and uses employees' biometric data in violation of BIPA. Specifically, Defendant has violated and continue to violate BIPA because they did not and continue not to:

> A.      Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their hand geometry scans were being collected, stored, disseminated, and used, as required by BIPA;
>
> B.      Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' hand geometry scans, as required by BIPA;

3

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

C.    Receive a written release from Plaintiff and others similarly situated to collect, store, disseminate or otherwise use their hand geometry scans, as required by BIPA; and,

D.    Obtain consent from Plaintiff and others similarly situated to disclose, redisclose, or otherwise disseminate their fingerprints to a third party as required by BIPA.

11.    Accordingly, Plaintiff seeks an Order: (1) declaring that Defendant's conduct violates BIPA; (2) requiring Defendant to cease the unlawful activities discussed herein; and (3) awarding liquidated damages to Plaintiff and the proposed class.

**PARTIES**

12.    Plaintiff Raven Fox is a natural person and a citizen of the State of Illinois.

13.    Defendant Dakkota Integrated Systems, LLC, is a limited liability company existing under the laws of the State of Michigan, with its principal place of business in Holt, Michigan. Dakkota is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

**JURISDICTION AND VENUE**

14.    This Court has jurisdiction over Defendant pursuant to 735 ILCS § 5/2-209 because Defendant conducts business transactions in Illinois, committed statutory violations and tortious acts in Illinois, and are registered to conduct business in Illinois.

15.    Venue is proper in Cook County because Defendant is authorized to conduct business in this State, Defendant conducts business transactions in Cook County, and Defendant committed the statutory violations alleged herein in Cook County and throughout Illinois.

4

# FACTUAL BACKGROUND

## I.   The Biometric Information Privacy Act

16.   In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became wary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

17.   In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

18.   Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS § 14/5.

19.   Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

20. BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

      a. Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

      b. Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

      c. Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS § 14/15(b).

21. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

22. Biometric identifiers include retina and iris scans, voiceprints, fingerprints, and – most importantly here – scans of hand geometry. *See* 740 ILCS § 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

23. BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS § 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or

biometric information without first obtaining consent for such disclosure. *See* 740 ILCS § 14/15(d)(1).

24.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS § 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS § 14/15(a).

25.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

26.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed.  Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

27.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

## II. Defendant Violates the Biometric Information Privacy Act.

28.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented with using individuals' biometric data stopped doing so.

29.     However, Defendant failed to take note of the shift in Illinois law governing the collection, use and dissemination of biometric data. As a result, Defendant continues to collect, store, use and disseminate individuals' biometric data in violation of BIPA.

30.     Specifically, when employees are hired by Defendants, they are required to have their hands scanned to enroll them in their employee database(s).

31.     Defendant uses and has used employee software supplied by a third party that requires employees to use their hand geometry as a means of authentication. Per the company's policy, all of Defendant's hourly employees are required to use their hand geometry to clock-in and clock-out for attendance.

32.     Upon information and belief, Defendant failed and continues to fail to inform their employees that it discloses or disclosed their hand geometry data to at least one out-of-state third-party vendor, and likely others; fail to inform their employees that it discloses their hand geometry data to other, currently unknown, third parties, which host the biometric data in their data centers; fail to inform their employees of the purposes and duration for which they collects their sensitive biometric data; and fail to obtain written releases from employees before collecting their hand geometry data.

33.     Furthermore, Defendant fails to provide employees with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying employees' hand geometry data when the initial purpose for collecting or obtaining their hand geometry data is no longer relevant, as required by BIPA.

8

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

34.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why such conduct – where individuals are aware that they are providing biometric information but not aware to whom or for what purposes they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as their hand geometry, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long. Defendant disregards these obligations and Defendant's employees' statutory rights and instead unlawfully collects, stores, uses and disseminates Defendant's employees' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

35.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and have not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with each company.

36.     Defendant's employees are not told what might happen to their biometric data if and when Defendant merges with another company or worse, if and when Defendant's business folds, or when the other third parties that have received their biometric data businesses fold.

37.     Since Defendant neither publishes a BIPA-mandated data-retention policy nor discloses the purposes for their collection and use of biometric data, Dakkota's employees have no idea to whom Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. Nor are Plaintiff and the putative Class told to whom Defendant currently discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

9

38.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

39.     By and through the actions detailed above, Defendant disregards Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

### III.     Plaintiff Raven Fox's Experience

40.     Plaintiff Raven Fox worked for Dakkota Integrated Systems as a Team Lead from February 2012 until January 28, 2019 at 12525 S. Carondolet Avenue, Chicago, Illinois, 60633.

41.     As a condition of employment with Dakkota, Plaintiff *was required* to scan her hand so that Defendant could use it as an authorization method to track her time. Plaintiff began scanning her hand when it was installed approximately three years ago, in 2016.

42.     Defendant subsequently stored Plaintiff's hand geometry data in its employee database(s).

43.     Plaintiff was required to scan her hand each time she clocked in for work and each time she clocked out of work.

44.     Plaintiff has never been informed of the specific limited purposes or length of time for which Defendant collected, stored, used, and/or disseminated her biometric data.

45.     Plaintiff has never been informed of any biometric data retention policy developed by Defendant, nor has she ever been informed of whether Dakkota will ever permanently delete her biometric data.

46.     Plaintiff has never been provided with nor ever signed a written release allowing Dakkota to collect, store, use, or disseminate her biometric data.

47.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's multiple violations of BIPA alleged herein.

48.    No amount of time or money can compensate Plaintiff if her biometric data is compromised by the lax procedures through which Defendant captured, stored, used, and disseminated her and other similarly-situated individuals' biometrics. Moreover, Plaintiff would not have provided her biometric data to Defendant if she had known that it would retain such information for an indefinite period of time without her consent.

49.    A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186 ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act"). Nonetheless, Plaintiff has been aggrieved because she suffered an injury in fact based on Defendant's violations of her legal rights. Defendant intentionally interfered with Plaintiff's right to possess and control her own sensitive biometric data. Additionally, Plaintiff suffered an invasion of a legally protected interest when Defendant secured her personal and private biometric data at a time when they had no right to do so, a gross invasion of her right to privacy. BIPA protects employees like Ms. Fox from this precise conduct. Defendant had no lawful right to secure this data or share it with third parties, absent a specific legislative license to do so.

50.    Plaintiff's biometric information is economically valuable, and such value will increase as the commercialization of biometrics continues to grow. As such, Plaintiff was not sufficiently compensated by Defendant for its retention and use of her and other similarly situated employees' biometric data. Plaintiff would not have agreed to work for Defendant for the compensation she received if she had known that Defendant would retain her biometric data indefinitely.

11

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

51. Plaintiff also suffered an informational injury because Defendant failed to provide her with information to which she was entitled by statute. Through BIPA, the Illinois legislature has created a right – an employee's right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data – and an injury: not receiving this extremely critical information.

52. Plaintiff also suffered an injury in fact because Defendant improperly disseminated her biometric identifiers and/or biometric information to third parties that hosted the biometric data in their data centers, in violation of BIPA.

53. Pursuant to 740 ILCS 14/15(b), Plaintiff was entitled to receive certain information prior to Defendant securing her biometric data; namely, information advising her of the specific limited purpose(s) and length of time for which Defendant collects, stores, uses, and disseminates her private biometric data; information regarding Defendant's biometric information retention policy; and, a written release allowing Defendant to collect, store, use, and disseminate her private biometric data. By depriving Plaintiff of this information, Defendant injured her. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

54. Plaintiff has plausibly inferred actual and ongoing harm in the form of monetary damages for the value of the collection and retention of her biometric data; in the form of monetary damages by not obtaining additional compensation as a result of being denied access to material information about Defendant's policies and practices; in the form of the unauthorized disclosure of her confidential biometric data to third parties; in the form of interference with her right to control and possess her confidential biometric data; and, in the form of the continuous and ongoing exposure to substantial and irreversible loss of privacy.

55.     As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, she seeks statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

56.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiff brings claims on her own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS § 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

57.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS § 14/15.

58.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 ILCS § 5/2-801, for the following class of similarly-situated individuals under BIPA:

> **All individuals working for Dakkota Integrated Systems in the State of Illinois who had their hand geometry collected, captured, received, obtained, maintained, stored or disclosed by Defendant during the applicable statutory period.**

59.     This action is properly maintained as a class action under 735 ILCS § 5/2-801 because:

> A.     This class is properly maintained as a class action under 735 ILCS § 5/2-801 because: The class is so numerous that joinder of all members is impracticable;

13

B.     There are questions of law or fact that are common to the class;

C.     The claims of the Plaintiff are typical of the claims of the class; and,

D.     The Plaintiff will fairly and adequately protect the interests of the class.

## Numerosity

60.     The total number of putative class members exceeds fifty (50) individuals. The exact number of class members can easily be determined from Dakkota's payroll records.

## Commonality

61.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

A.     Whether Defendant collected, captured, or otherwise obtained Plaintiff's biometric identifiers or biometric information;

B.     Whether Defendant properly informed Plaintiff of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

C.     Whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's biometric identifiers or biometric information;

D.     Whether Defendant disclosed or re-disclosed Plaintiff's biometric identifiers or biometric information;

E.     Whether Defendant sold, leased, traded, or otherwise profited from Plaintiff's biometric identifiers or biometric information;

F.     Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purposes for collecting or obtaining such identifiers or information has been satisfied or within three years of its last interaction with the individual, whichever occurs first;

G.      Whether Defendant complies with any such written policy, if one exists;

H.      Whether Defendant used Plaintiff's hand geometry to identify them;

I.      Whether Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

J.      Whether the violations of BIPA were committed negligently; and

K.      Whether the violations of BIPA were committed recklessly or intentionally.

62.      Plaintiff anticipates that Defendant will raise defenses that are common to the class.

### Adequacy

63.      Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

### Typicality

64.      The claims asserted by Plaintiff are typical of the class members she seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

65.      Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of her or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23(b)(3).

### Predominance and Superiority

66.      The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action

15

is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

67.    Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

## FIRST CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule

68.    Plaintiff incorporates the foregoing allegations as if set forth fully herein.

69.    BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule

16

and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

70.     Defendant fails to comply with these BIPA mandates.

71.     Defendant Dakkota Integrated Systems is a Michigan limited liability company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

72.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Dakkota Integrated Systems (in the form of hand geometry data), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

73.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

74.     Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

75.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and has not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

76.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in

17

the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740

ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant

to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information

77.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78.     BIPA requires companies to obtain informed written consent from employees

before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity

to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's

biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in

writing that a biometric identifier or biometric information is being collected or stored; (2) informs

the subject…in writing of the specific purpose and length of term for which a biometric identifier

or biometric information is being collected, stored, and used; *and* (3) receives a written release

executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b)

(emphasis added).

79.     Defendant fails to comply with these BIPA mandates.

80.     Defendant Dakkota Integrated Systems is a Michigan limited liability company

registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740

ILCS § 14/10.

81.     Plaintiff and the Class are individuals who have had their "biometric identifiers"

collected by Dakkota Integrated Systems (in the form of hand geometry), as explained in detail in

Sections II and III, *supra*. *See* 740 ILCS § 14/10.

82.     Plaintiff's and the Class's biometric identifiers were used to identify them and,

18

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

83. Defendant systematically and automatically collected, used, and stored Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

84. Defendant did not inform Plaintiff in writing that their biometric identifiers and/or biometric information were being collected, stored, and used, nor did Defendant inform Plaintiff in writing of the specific purpose and length of term for which her biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

85. By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

86. On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

**THIRD CAUSE OF ACTION**
**Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information**
**Before Obtaining Consent**

87.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

88.     BIPA prohibits private entities from disclosing a person's or customer's biometric

identifier or biometric information without first obtaining consent for that disclosure. *See* 740

ILCS 14/15(d)(1).

89.     Defendant fails to comply with this BIPA mandate.

90.     Defendant Dakkota Integrated Systems is a Michigan limited liability company

registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740

ILCS § 14/10.

91.     Plaintiff and the Class are individuals who have had their "biometric identifiers"

collected by Dakkota Integrated Systems (in the form of hand geometry), as explained in detail in

Sections II and III, *supra*. *See* 740 ILCS § 14/10.

92.     Plaintiff's and the Class's biometric identifiers were used to identify them and,

therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

93.     Defendant systematically and automatically collected, used, and stored Plaintiff's

biometric identifiers and/or biometric information without first obtaining the consent required by

740 ILCS 14/15(d)(1).

94.     By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's

biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's

and the Class's rights to privacy in their biometric identifiers or biometric information as set forth

in BIPA. *See* 740 ILCS 14/1, *et seq.*

95.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2)

20

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Plaintiff Raven Fox respectfully requests that this Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Raven Fox as Class Representative, and appoint Stephan Zouras, LLP, as Class Counsel;

B.    Declaring that Defendant's actions, as set forth above, violate BIPA;

C.    Awarding statutory damages of $5,000 for *each* reckless violation of BIPA pursuant to 740 ILCS § 14/20(2), or in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS § 14/20(1);

D.    Declaring that Defendant's actions, as set forth above, were intentional or reckless;

E.    Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to collect, store, use, and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

F.    Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

G.    Awarding Plaintiff and the class pre- and post-judgment interest, to the extent allowable; and,

H.    Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Date: March 20, 2019

Respectfully Submitted,

*/s/ Ryan F. Stephan*
Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
Firm ID: 43734

**ATTORNEYS FOR PLAINTIFF**

22

FILED
3/20/2019 12:54 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH03620

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | **(08/01/18) CCG 0001 A** |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Raven Fox

(Name all parties)

v.

Dakkota Intergrated Systems, LLC.

Case No. _2019CH03620_

Dakkota Integrated Systems, LLC.
1875 Holloway Drive
Holt, MI 48842

☑ **SUMMONS**   ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

*FILED DATE: 3/20/2019 12:54 PM 2019CH03620*

Atty. No.: 43734

Atty Name: Ryan F. Stephan (Stephan Zouras)

Atty. for: Raven Fox

Address: 100 N. Riverside Plaza

City: Chicago

State: IL    Zip: 60606

Telephone: 312-233-1550

Primary Email: rstephan@stephanzouras.com

Witness: 3/20/2019 12:54 PM DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

O  Richard J Daley Center
   50 W Washington
   Chicago, IL 60602

O  District 2 - Skokie
   5600 Old Orchard Rd
   Skokie, IL 60077

O  District 3 - Rolling Meadows
   2121 Euclid
   Rolling Meadows, IL 60008

O  District 4 - Maywood
   1500 Maybrook Ave
   Maywood, IL 60153

O  District 5 - Bridgeview
   10220 S 76th Ave
   Bridgeview, IL 60455

O  District 6 - Markham
   16501 S Kedzie Pkwy
   Markham, IL 60428

O  Domestic Violence Court
   555 W Harrison
   Chicago, IL 60607

O  Juvenile Center Building
   2245 W Ogden Ave, Rm 13
   Chicago, IL 60602

O  Criminal Court Building
   2650 S California Ave, Rm 526
   Chicago, IL 60608

### Daley Center Divisions/Departments

O  Civil Division
   Richard J Daley Center
   50 W Washington, Rm 601
   Chicago, IL 60602
   Hours: 8:30 am - 4:30 pm

O  Chancery Division
   Richard J Daley Center
   50 W Washington, Rm 802
   Chicago, IL 60602
   Hours: 8:30 am - 4:30 pm

O  Domestic Relations Division
   Richard J Daley Center
   50 W Washington, Rm 802
   Chicago, IL 60602
   Hours: 8:30 am - 4:30 pm

O  Civil Appeals
   Richard J Daley Center
   50 W Washington, Rm 801
   Chicago, IL 60602
   Hours: 8:30 am - 4:30 pm

O  Criminal Department
   Richard J Daley Center
   50 W Washington, Rm 1006
   Chicago, IL 60602
   Hours: 8:30 am - 4:30 pm

O  County Division
   Richard J Daley Center
   50 W Washington, Rm 1202
   Chicago, IL 60602
   Hours: 8:30 am - 4:30 pm

O  Probate Division
   Richard J Daley Center
   50 W Washington, Rm 1202
   Chicago, IL 60602
   Hours: 8:30 am - 4:30 pm

O  Law Division
   Richard J Daley Center
   50 W Washington, Rm 801
   Chicago, IL 60602
   Hours: 8:30 am - 4:30 pm

O  Traffic Division
   Richard J Daley Center
   50 W Washington, Lower Level
   Chicago, IL 60602
   Hours: 8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

Return Date: No return date scheduled
Hearing Date: 7/18/2019 10:00 AM - 10:00 AM
Courtroom Number: 2302
Location: District 1 Court
    Cook County, IL

FILED
3/20/2019 12:54 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH03620

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| RAVEN FOX, individually, and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>DAKKOTA INTEGRATED SYSTEMS, LLC )<br><br>Defendant. ) | **Case No.**  2019CH03620<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

    Plaintiff Raven Fox ("Plaintiff" or "Fox"), by and through her attorneys, individually and on behalf of all others similarly situated (the "Class"), brings the following Class Action Complaint pursuant to the Illinois Code of Civil Procedure 735 ILCS §§ 5/2-801 and 2-802, against Dakkota Integrated Systems, LLC ("Dakkota" or "Defendant"), their subsidiaries and affiliates, to redress and curtail Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric data. Plaintiff alleges as follows upon personal knowledge as to herself, her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

    1.    Defendant Dakkota is an automotive supplier that manages the assembly and sequencing of integrated automotive interiors for original equipment manufacturers. Dakkota has locations throughout the Midwest, including a location in Chicago.

2.      When Dakkota hires an employee, her or she is enrolled in its third-party employee database(s). Dakkota uses the employee database to monitor the time worked by Dakkota's hourly employees.

3.      While many employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Dakkota employees are required to have their hand geometry scanned by biometric timekeeping device.

4.      Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Defendant's – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

5.      Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – one's hand geometry is a set of unique, permanent biometric identifiers associated with each employee. This exposes Dakkota's employees to serious and irreversible privacy risks. For example, if a database containing hand geometry scans or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels, and Facebook/Cambridge Analytica data breaches or misuses – employees have **_no_** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

6.      In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* https://www.opm.gov/cybersecurity/cybersecurity-incidents.

FILED DATE: 3/20/2019 12:54 PM    2019CH03620

7.      A black market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259f138.

8.      In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

9.      Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect and store Illinois citizens' biometrics, such as hand geometry.

10.     Notwithstanding the clear and unequivocal requirements of the law, Defendant disregards Dakkota employees' statutorily protected privacy rights and unlawfully collects, stores, disseminates, and uses employees' biometric data in violation of BIPA. Specifically, Defendant has violated and continue to violate BIPA because they did not and continue not to:

> A.      Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their hand geometry scans were being collected, stored, disseminated, and used, as required by BIPA;
>
> B.      Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' hand geometry scans, as required by BIPA;

C.     Receive a written release from Plaintiff and others similarly situated to collect, store, disseminate or otherwise use their hand geometry scans, as required by BIPA; and,

D.     Obtain consent from Plaintiff and others similarly situated to disclose, redisclose, or otherwise disseminate their fingerprints to a third party as required by BIPA.

11.     Accordingly, Plaintiff seeks an Order: (1) declaring that Defendant's conduct violates BIPA; (2) requiring Defendant to cease the unlawful activities discussed herein; and (3) awarding liquidated damages to Plaintiff and the proposed class.

PARTIES

12.     Plaintiff Raven Fox is a natural person and a citizen of the State of Illinois.

13.     Defendant Dakkota Integrated Systems, LLC, is a limited liability company existing under the laws of the State of Michigan, with its principal place of business in Holt, Michigan. Dakkota is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

JURISDICTION AND VENUE

14.     This Court has jurisdiction over Defendant pursuant to 735 ILCS § 5/2-209 because Defendant conducts business transactions in Illinois, committed statutory violations and tortious acts in Illinois, and are registered to conduct business in Illinois.

15.     Venue is proper in Cook County because Defendant is authorized to conduct business in this State, Defendant conducts business transactions in Cook County, and Defendant committed the statutory violations alleged herein in Cook County and throughout Illinois.

## FACTUAL BACKGROUND

### I.   The Biometric Information Privacy Act

16.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became wary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

17.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

18.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS § 14/5.

19.     Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

20.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

   a.  Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

   b.  Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

   c.  Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS § 14/15(b).

21.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

22.     Biometric identifiers include retina and iris scans, voiceprints, fingerprints, and – most importantly here – scans of hand geometry. *See* 740 ILCS § 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

23.     BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS § 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or

6

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

biometric information without first obtaining consent for such disclosure. *See* 740 ILCS § 14/15(d)(1).

24.    BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS § 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS § 14/15(a).

25.    The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

26.    BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

27.    Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

## II.     Defendant Violates the Biometric Information Privacy Act.

28.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented with using individuals' biometric data stopped doing so.

29.     However, Defendant failed to take note of the shift in Illinois law governing the collection, use and dissemination of biometric data. As a result, Defendant continues to collect, store, use and disseminate individuals' biometric data in violation of BIPA.

30.     Specifically, when employees are hired by Defendants, they are required to have their hands scanned to enroll them in their employee database(s).

31.     Defendant uses and has used employee software supplied by a third party that requires employees to use their hand geometry as a means of authentication. Per the company's policy, all of Defendant's hourly employees are required to use their hand geometry to clock-in and clock-out for attendance.

32.     Upon information and belief, Defendant failed and continues to fail to inform their employees that it discloses or disclosed their hand geometry data to at least one out-of-state third-party vendor, and likely others; fail to inform their employees that it discloses their hand geometry data to other, currently unknown, third parties, which host the biometric data in their data centers; fail to inform their employees of the purposes and duration for which they collects their sensitive biometric data; and fail to obtain written releases from employees before collecting their hand geometry data.

33.     Furthermore, Defendant fails to provide employees with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying employees' hand geometry data when the initial purpose for collecting or obtaining their hand geometry data is no longer relevant, as required by BIPA.

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

34.    The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why such conduct – where individuals are aware that they are providing biometric information but not aware to whom or for what purposes they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as their hand geometry, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long. Defendant disregards these obligations and Defendant's employees' statutory rights and instead unlawfully collects, stores, uses and disseminates Defendant's employees' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

35.    Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and have not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with each company.

36.    Defendant's employees are not told what might happen to their biometric data if and when Defendant merges with another company or worse, if and when Defendant's business folds, or when the other third parties that have received their biometric data businesses fold.

37.    Since Defendant neither publishes a BIPA-mandated data-retention policy nor discloses the purposes for their collection and use of biometric data, Dakkota's employees have no idea to whom Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. Nor are Plaintiff and the putative Class told to whom Defendant currently discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

38.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

39.     By and through the actions detailed above, Defendant disregards Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

**III.    Plaintiff Raven Fox's Experience**

40.     Plaintiff Raven Fox worked for Dakkota Integrated Systems as a Team Lead from February 2012 until January 28, 2019 at 12525 S. Carondolet Avenue, Chicago, Illinois, 60633.

41.     As a condition of employment with Dakkota, Plaintiff *was required* to scan her hand so that Defendant could use it as an authorization method to track her time. Plaintiff began scanning her hand when it was installed approximately three years ago, in 2016.

42.     Defendant subsequently stored Plaintiff's hand geometry data in its employee database(s).

43.     Plaintiff was required to scan her hand each time she clocked in for work and each time she clocked out of work.

44.     Plaintiff has never been informed of the specific limited purposes or length of time for which Defendant collected, stored, used, and/or disseminated her biometric data.

45.     Plaintiff has never been informed of any biometric data retention policy developed by Defendant, nor has she ever been informed of whether Dakkota will ever permanently delete her biometric data.

46.     Plaintiff has never been provided with nor ever signed a written release allowing Dakkota to collect, store, use, or disseminate her biometric data.

47.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's multiple violations of BIPA alleged herein.

10

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

48. No amount of time or money can compensate Plaintiff if her biometric data is compromised by the lax procedures through which Defendant captured, stored, used, and disseminated her and other similarly-situated individuals' biometrics. Moreover, Plaintiff would not have provided her biometric data to Defendant if she had known that it would retain such information for an indefinite period of time without her consent.

49. A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186 ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act"). Nonetheless, Plaintiff has been aggrieved because she suffered an injury in fact based on Defendant's violations of her legal rights. Defendant intentionally interfered with Plaintiff's right to possess and control her own sensitive biometric data. Additionally, Plaintiff suffered an invasion of a legally protected interest when Defendant secured her personal and private biometric data at a time when they had no right to do so, a gross invasion of her right to privacy. BIPA protects employees like Ms. Fox from this precise conduct. Defendant had no lawful right to secure this data or share it with third parties, absent a specific legislative license to do so.

50. Plaintiff's biometric information is economically valuable, and such value will increase as the commercialization of biometrics continues to grow. As such, Plaintiff was not sufficiently compensated by Defendant for its retention and use of her and other similarly situated employees' biometric data. Plaintiff would not have agreed to work for Defendant for the compensation she received if she had known that Defendant would retain her biometric data indefinitely.

51.     Plaintiff also suffered an informational injury because Defendant failed to provide her with information to which she was entitled by statute. Through BIPA, the Illinois legislature has created a right – an employee's right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data – and an injury: not receiving this extremely critical information.

52.     Plaintiff also suffered an injury in fact because Defendant improperly disseminated her biometric identifiers and/or biometric information to third parties that hosted the biometric data in their data centers, in violation of BIPA.

53.     Pursuant to 740 ILCS 14/15(b), Plaintiff was entitled to receive certain information prior to Defendant securing her biometric data; namely, information advising her of the specific limited purpose(s) and length of time for which Defendant collects, stores, uses, and disseminates her private biometric data; information regarding Defendant's biometric information retention policy; and, a written release allowing Defendant to collect, store, use, and disseminate her private biometric data. By depriving Plaintiff of this information, Defendant injured her. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

54.     Plaintiff has plausibly inferred actual and ongoing harm in the form of monetary damages for the value of the collection and retention of her biometric data; in the form of monetary damages by not obtaining additional compensation as a result of being denied access to material information about Defendant's policies and practices; in the form of the unauthorized disclosure of her confidential biometric data to third parties; in the form of interference with her right to control and possess her confidential biometric data; and, in the form of the continuous and ongoing exposure to substantial and irreversible loss of privacy.

55.     As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, she seeks statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

56.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiff brings claims on her own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS § 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

57.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS § 14/15.

58.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 ILCS § 5/2-801, for the following class of similarly-situated individuals under BIPA:

> **All individuals working for Dakkota Integrated Systems in the State of Illinois who had their hand geometry collected, captured, received, obtained, maintained, stored or disclosed by Defendant during the applicable statutory period.**

59.     This action is properly maintained as a class action under 735 ILCS § 5/2-801 because:

> A.     This class is properly maintained as a class action under 735 ILCS § 5/2-801 because: The class is so numerous that joinder of all members is impracticable;

13

B.    There are questions of law or fact that are common to the class;

C.    The claims of the Plaintiff are typical of the claims of the class; and,

D.    The Plaintiff will fairly and adequately protect the interests of the class.

### Numerosity

60.    The total number of putative class members exceeds fifty (50) individuals.  The exact number of class members can easily be determined from Dakkota's payroll records.

### Commonality

61.    There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

A.    Whether Defendant collected, captured, or otherwise obtained Plaintiff's biometric identifiers or biometric information;

B.    Whether Defendant properly informed Plaintiff of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

C.    Whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's biometric identifiers or biometric information;

D.    Whether Defendant disclosed or re-disclosed Plaintiff's biometric identifiers or biometric information;

E.    Whether Defendant sold, leased, traded, or otherwise profited from Plaintiff's biometric identifiers or biometric information;

F.    Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purposes for collecting or obtaining such identifiers or information has been satisfied or within three years of its last interaction with the individual, whichever occurs first;

14

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

G.   Whether Defendant complies with any such written policy, if one exists;

H.   Whether Defendant used Plaintiff's hand geometry to identify them;

I.   Whether Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

J.   Whether the violations of BIPA were committed negligently; and

K.   Whether the violations of BIPA were committed recklessly or intentionally.

62.   Plaintiff anticipates that Defendant will raise defenses that are common to the class.

## Adequacy

63.   Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

## Typicality

64.   The claims asserted by Plaintiff are typical of the class members she seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

65.   Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of her or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23(b)(3).

## Predominance and Superiority

66.   The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members.  A class action

15

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

67.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to**
**Publicly-Available Retention Schedule**

68.     Plaintiff incorporates the foregoing allegations as if set forth fully herein.

69.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule

16

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

70.     Defendant fails to comply with these BIPA mandates.

71.     Defendant Dakkota Integrated Systems is a Michigan limited liability company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

72.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Dakkota Integrated Systems (in the form of hand geometry data), as explained in detail in Sections II and III, *supra. See* 740 ILCS § 14/10.

73.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

74.     Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

75.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and has not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

76.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in

17

the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740

ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant

to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information

77.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78.    BIPA requires companies to obtain informed written consent from employees

before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity

to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's

biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in

writing that a biometric identifier or biometric information is being collected or stored; (2) informs

the subject…in writing of the specific purpose and length of term for which a biometric identifier

or biometric information is being collected, stored, and used; *and* (3) receives a written release

executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b)

(emphasis added).

79.    Defendant fails to comply with these BIPA mandates.

80.    Defendant Dakkota Integrated Systems is a Michigan limited liability company

registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740

ILCS § 14/10.

81.    Plaintiff and the Class are individuals who have had their "biometric identifiers"

collected by Dakkota Integrated Systems (in the form of hand geometry), as explained in detail in

Sections II and III, *supra*. *See* 740 ILCS § 14/10.

82.    Plaintiff's and the Class's biometric identifiers were used to identify them and,

18

therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

83.     Defendant systematically and automatically collected, used, and stored Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

84.     Defendant did not inform Plaintiff in writing that their biometric identifiers and/or biometric information were being collected, stored, and used, nor did Defendant inform Plaintiff in writing of the specific purpose and length of term for which her biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

85.     By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

86.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

## THIRD CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent

87.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

88.   BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

89.   Defendant fails to comply with this BIPA mandate.

90.   Defendant Dakkota Integrated Systems is a Michigan limited liability company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

91.   Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Dakkota Integrated Systems (in the form of hand geometry), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

92.   Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

93.   Defendant systematically and automatically collected, used, and stored Plaintiff's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

94.   By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

95.   On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2)

20

injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Plaintiff Raven Fox respectfully requests that this Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Raven Fox as Class Representative, and appoint Stephan Zouras, LLP, as Class Counsel;

B.    Declaring that Defendant's actions, as set forth above, violate BIPA;

C.    Awarding statutory damages of $5,000 for *each* reckless violation of BIPA pursuant to 740 ILCS § 14/20(2), or in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS § 14/20(1);

D.    Declaring that Defendant's actions, as set forth above, were intentional or reckless;

E.    Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to collect, store, use, and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

F.    Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

G.    Awarding Plaintiff and the class pre- and post-judgment interest, to the extent allowable; and,

H.    Awarding such other and further relief as equity and justice may require.

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

# JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Date: March 20, 2019

Respectfully Submitted,

*/s/ Ryan F. Stephan*
Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
Firm ID: 43734

**ATTORNEYS FOR PLAINTIFF**

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on March 20, 2019, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

/s/ Ryan F. Stephan

Return Date: No return date scheduled
Hearing Date: 7/18/2019 10:00 AM - 10:00 AM
Courtroom Number: 2302
Location: District 1 Court
    Cook County, IL

FILED
3/20/2019 12:54 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH03620

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| RAVEN FOX, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No.  2019CH03620 |
| v. | ) ) | |
| DAKKOTA INTEGRATED SYSTEMS, LLC | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

### CLASS ACTION COMPLAINT

Plaintiff Raven Fox ("Plaintiff" or "Fox"), by and through her attorneys, individually and on behalf of all others similarly situated (the "Class"), brings the following Class Action Complaint pursuant to the Illinois Code of Civil Procedure 735 ILCS §§ 5/2-801 and 2-802, against Dakkota Integrated Systems, LLC ("Dakkota" or "Defendant"), their subsidiaries and affiliates, to redress and curtail Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric data. Plaintiff alleges as follows upon personal knowledge as to herself, her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.    Defendant Dakkota is an automotive supplier that manages the assembly and sequencing of integrated automotive interiors for original equipment manufacturers. Dakkota has locations throughout the Midwest, including a location in Chicago.

2.     When Dakkota hires an employee, her or she is enrolled in its third-party employee database(s). Dakkota uses the employee database to monitor the time worked by Dakkota's hourly employees.

3.     While many employers use conventional methods for tracking time worked (such as ID badge swipes or punch clocks), Dakkota employees are required to have their hand geometry scanned by biometric timekeeping device.

4.     Biometrics are not relegated to esoteric corners of commerce. Many businesses – such as Defendant's – and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

5.     Unlike ID badges or time cards – which can be changed or replaced if stolen or compromised – one's hand geometry is a set of unique, permanent biometric identifiers associated with each employee. This exposes Dakkota's employees to serious and irreversible privacy risks. For example, if a database containing hand geometry scans or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels, and Facebook/Cambridge Analytica data breaches or misuses – employees have **_no_** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

6.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* https://www.opm.gov/cybersecurity/cybersecurity-incidents.

2

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

7.     A black market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259f138.

8.     In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

9.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect and store Illinois citizens' biometrics, such as hand geometry.

10.    Notwithstanding the clear and unequivocal requirements of the law, Defendant disregards Dakkota employees' statutorily protected privacy rights and unlawfully collects, stores, disseminates, and uses employees' biometric data in violation of BIPA. Specifically, Defendant has violated and continue to violate BIPA because they did not and continue not to:

      A.     Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their hand geometry scans were being collected, stored, disseminated, and used, as required by BIPA;

      B.     Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' hand geometry scans, as required by BIPA;

3

C.     Receive a written release from Plaintiff and others similarly situated to collect, store, disseminate or otherwise use their hand geometry scans, as required by BIPA; and,

D.     Obtain consent from Plaintiff and others similarly situated to disclose, redisclose, or otherwise disseminate their fingerprints to a third party as required by BIPA.

11.     Accordingly, Plaintiff seeks an Order: (1) declaring that Defendant's conduct violates BIPA; (2) requiring Defendant to cease the unlawful activities discussed herein; and (3) awarding liquidated damages to Plaintiff and the proposed class.

## PARTIES

12.     Plaintiff Raven Fox is a natural person and a citizen of the State of Illinois.

13.     Defendant Dakkota Integrated Systems, LLC, is a limited liability company existing under the laws of the State of Michigan, with its principal place of business in Holt, Michigan. Dakkota is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including Cook County.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over Defendant pursuant to 735 ILCS § 5/2-209 because Defendant conducts business transactions in Illinois, committed statutory violations and tortious acts in Illinois, and are registered to conduct business in Illinois.

15.     Venue is proper in Cook County because Defendant is authorized to conduct business in this State, Defendant conducts business transactions in Cook County, and Defendant committed the statutory violations alleged herein in Cook County and throughout Illinois.

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act

16.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became wary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

17.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

18.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS § 14/5.

19.     Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

20.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

   a.   Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

   b.   Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

   c.   Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS § 14/15(b).

21.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

22.     Biometric identifiers include retina and iris scans, voiceprints, fingerprints, and – most importantly here – scans of hand geometry. *See* 740 ILCS § 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

23.     BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS § 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or

6

biometric information without first obtaining consent for such disclosure. *See* 740 ILCS § 14/15(d)(1).

24.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS § 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS § 14/15(a).

25.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

26.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

27.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

7

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

## II. Defendant Violates the Biometric Information Privacy Act.

28. By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented with using individuals' biometric data stopped doing so.

29. However, Defendant failed to take note of the shift in Illinois law governing the collection, use and dissemination of biometric data. As a result, Defendant continues to collect, store, use and disseminate individuals' biometric data in violation of BIPA.

30. Specifically, when employees are hired by Defendants, they are required to have their hands scanned to enroll them in their employee database(s).

31. Defendant uses and has used employee software supplied by a third party that requires employees to use their hand geometry as a means of authentication. Per the company's policy, all of Defendant's hourly employees are required to use their hand geometry to clock-in and clock-out for attendance.

32. Upon information and belief, Defendant failed and continues to fail to inform their employees that it discloses or disclosed their hand geometry data to at least one out-of-state third-party vendor, and likely others; fail to inform their employees that it discloses their hand geometry data to other, currently unknown, third parties, which host the biometric data in their data centers; fail to inform their employees of the purposes and duration for which they collects their sensitive biometric data; and fail to obtain written releases from employees before collecting their hand geometry data.

33. Furthermore, Defendant fails to provide employees with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying employees' hand geometry data when the initial purpose for collecting or obtaining their hand geometry data is no longer relevant, as required by BIPA.

8

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

34.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why such conduct – where individuals are aware that they are providing biometric information but not aware to whom or for what purposes they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as their hand geometry, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long. Defendant disregards these obligations and Defendant's employees' statutory rights and instead unlawfully collects, stores, uses and disseminates Defendant's employees' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

35.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and have not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with each company.

36.     Defendant's employees are not told what might happen to their biometric data if and when Defendant merges with another company or worse, if and when Defendant's business folds, or when the other third parties that have received their biometric data businesses fold.

37.     Since Defendant neither publishes a BIPA-mandated data-retention policy nor discloses the purposes for their collection and use of biometric data, Dakkota's employees have no idea to whom Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. Nor are Plaintiff and the putative Class told to whom Defendant currently discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

38.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

39.     By and through the actions detailed above, Defendant disregards Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

**III.     Plaintiff Raven Fox's Experience**

40.     Plaintiff Raven Fox worked for Dakkota Integrated Systems as a Team Lead from February 2012 until January 28, 2019 at 12525 S. Carondolet Avenue, Chicago, Illinois, 60633.

41.     As a condition of employment with Dakkota, Plaintiff *was required* to scan her hand so that Defendant could use it as an authorization method to track her time. Plaintiff began scanning her hand when it was installed approximately three years ago, in 2016.

42.     Defendant subsequently stored Plaintiff's hand geometry data in its employee database(s).

43.     Plaintiff was required to scan her hand each time she clocked in for work and each time she clocked out of work.

44.     Plaintiff has never been informed of the specific limited purposes or length of time for which Defendant collected, stored, used, and/or disseminated her biometric data.

45.     Plaintiff has never been informed of any biometric data retention policy developed by Defendant, nor has she ever been informed of whether Dakkota will ever permanently delete her biometric data.

46.     Plaintiff has never been provided with nor ever signed a written release allowing Dakkota to collect, store, use, or disseminate her biometric data.

47.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's multiple violations of BIPA alleged herein.

10

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

48.     No amount of time or money can compensate Plaintiff if her biometric data is compromised by the lax procedures through which Defendant captured, stored, used, and disseminated her and other similarly-situated individuals' biometrics. Moreover, Plaintiff would not have provided her biometric data to Defendant if she had known that it would retain such information for an indefinite period of time without her consent.

49.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186 ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act"). Nonetheless, Plaintiff has been aggrieved because she suffered an injury in fact based on Defendant's violations of her legal rights. Defendant intentionally interfered with Plaintiff's right to possess and control her own sensitive biometric data. Additionally, Plaintiff suffered an invasion of a legally protected interest when Defendant secured her personal and private biometric data at a time when they had no right to do so, a gross invasion of her right to privacy. BIPA protects employees like Ms. Fox from this precise conduct. Defendant had no lawful right to secure this data or share it with third parties, absent a specific legislative license to do so.

50.     Plaintiff's biometric information is economically valuable, and such value will increase as the commercialization of biometrics continues to grow. As such, Plaintiff was not sufficiently compensated by Defendant for its retention and use of her and other similarly situated employees' biometric data. Plaintiff would not have agreed to work for Defendant for the compensation she received if she had known that Defendant would retain her biometric data indefinitely.

11

FILED DATE: 3/20/2019 12:54 PM    2019CH03620

51.     Plaintiff also suffered an informational injury because Defendant failed to provide her with information to which she was entitled by statute. Through BIPA, the Illinois legislature has created a right – an employee's right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data – and an injury: not receiving this extremely critical information.

52.     Plaintiff also suffered an injury in fact because Defendant improperly disseminated her biometric identifiers and/or biometric information to third parties that hosted the biometric data in their data centers, in violation of BIPA.

53.     Pursuant to 740 ILCS 14/15(b), Plaintiff was entitled to receive certain information prior to Defendant securing her biometric data; namely, information advising her of the specific limited purpose(s) and length of time for which Defendant collects, stores, uses, and disseminates her private biometric data; information regarding Defendant's biometric information retention policy; and, a written release allowing Defendant to collect, store, use, and disseminate her private biometric data. By depriving Plaintiff of this information, Defendant injured her. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

54.     Plaintiff has plausibly inferred actual and ongoing harm in the form of monetary damages for the value of the collection and retention of her biometric data; in the form of monetary damages by not obtaining additional compensation as a result of being denied access to material information about Defendant's policies and practices; in the form of the unauthorized disclosure of her confidential biometric data to third parties; in the form of interference with her right to control and possess her confidential biometric data; and, in the form of the continuous and ongoing exposure to substantial and irreversible loss of privacy.

12

55.     As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, she seeks statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

56.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiff brings claims on her own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS § 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

57.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS § 14/15.

58.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 ILCS § 5/2-801, for the following class of similarly-situated individuals under BIPA:

> **All individuals working for Dakkota Integrated Systems in the State of Illinois who had their hand geometry collected, captured, received, obtained, maintained, stored or disclosed by Defendant during the applicable statutory period.**

59.     This action is properly maintained as a class action under 735 ILCS § 5/2-801 because:

> A.     This class is properly maintained as a class action under 735 ILCS § 5/2-801 because: The class is so numerous that joinder of all members is impracticable;

13

B.    There are questions of law or fact that are common to the class;

C.    The claims of the Plaintiff are typical of the claims of the class; and,

D.    The Plaintiff will fairly and adequately protect the interests of the class.

## Numerosity

60.    The total number of putative class members exceeds fifty (50) individuals. The exact number of class members can easily be determined from Dakkota's payroll records.

## Commonality

61.    There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

A.    Whether Defendant collected, captured, or otherwise obtained Plaintiff's biometric identifiers or biometric information;

B.    Whether Defendant properly informed Plaintiff of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

C.    Whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's biometric identifiers or biometric information;

D.    Whether Defendant disclosed or re-disclosed Plaintiff's biometric identifiers or biometric information;

E.    Whether Defendant sold, leased, traded, or otherwise profited from Plaintiff's biometric identifiers or biometric information;

F.    Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purposes for collecting or obtaining such identifiers or information has been satisfied or within three years of its last interaction with the individual, whichever occurs first;

14

FILED DATE: 3/20/2019 12:54 PM    2019CH03620

G.    Whether Defendant complies with any such written policy, if one exists;

H.    Whether Defendant used Plaintiff's hand geometry to identify them;

I.    Whether Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

J.    Whether the violations of BIPA were committed negligently; and

K.    Whether the violations of BIPA were committed recklessly or intentionally.

62.    Plaintiff anticipates that Defendant will raise defenses that are common to the class.

### Adequacy

63.    Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

### Typicality

64.    The claims asserted by Plaintiff are typical of the class members she seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

65.    Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of her or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23(b)(3).

### Predominance and Superiority

66.    The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action

is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

67.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule**

68.     Plaintiff incorporates the foregoing allegations as if set forth fully herein.

69.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule

FILED DATE: 3/20/2019 12:54 PM 2019CH03620

and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

70.     Defendant fails to comply with these BIPA mandates.

71.     Defendant Dakkota Integrated Systems is a Michigan limited liability company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

72.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Dakkota Integrated Systems (in the form of hand geometry data), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

73.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

74.     Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

75.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and has not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

76.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in

17

the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740

ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant

to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information

77.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78.     BIPA requires companies to obtain informed written consent from employees

before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity

to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's

biometric identifiers or biometric information unless [the entity] first: (1) informs the subject...in

writing that a biometric identifier or biometric information is being collected or stored; (2) informs

the subject...in writing of the specific purpose and length of term for which a biometric identifier

or biometric information is being collected, stored, and used; *and* (3) receives a written release

executed by the subject of the biometric identifier or biometric information..." 740 ILCS 14/15(b)

(emphasis added).

79.     Defendant fails to comply with these BIPA mandates.

80.     Defendant Dakkota Integrated Systems is a Michigan limited liability company

registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740

ILCS § 14/10.

81.     Plaintiff and the Class are individuals who have had their "biometric identifiers"

collected by Dakkota Integrated Systems (in the form of hand geometry), as explained in detail in

Sections II and III, *supra*. *See* 740 ILCS § 14/10.

82.     Plaintiff's and the Class's biometric identifiers were used to identify them and,

therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

83.     Defendant systematically and automatically collected, used, and stored Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

84.     Defendant did not inform Plaintiff in writing that their biometric identifiers and/or biometric information were being collected, stored, and used, nor did Defendant inform Plaintiff in writing of the specific purpose and length of term for which her biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

85.     By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

86.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

## THIRD CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent

87. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

88. BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

89. Defendant fails to comply with this BIPA mandate.

90. Defendant Dakkota Integrated Systems is a Michigan limited liability company registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

91. Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Dakkota Integrated Systems (in the form of hand geometry), as explained in detail in Sections II and III, *supra. See* 740 ILCS § 14/10.

92. Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

93. Defendant systematically and automatically collected, used, and stored Plaintiff's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

94. By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

95. On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2)

injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for <u>each</u> reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for <u>each</u> negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Plaintiff Raven Fox respectfully requests that this Court enter an Order:

A.   Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Raven Fox as Class Representative, and appoint Stephan Zouras, LLP, as Class Counsel;

B.   Declaring that Defendant's actions, as set forth above, violate BIPA;

C.   Awarding statutory damages of $5,000 for *each* reckless violation of BIPA pursuant to 740 ILCS § 14/20(2), or in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS § 14/20(1);

D.   Declaring that Defendant's actions, as set forth above, were intentional or reckless;

E.   Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to collect, store, use, and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

F.   Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

G.   Awarding Plaintiff and the class pre- and post-judgment interest, to the extent allowable; and,

H.   Awarding such other and further relief as equity and justice may require.

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Date: March 20, 2019

Respectfully Submitted,

*/s/ Ryan F. Stephan*
Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
Firm ID: 43734

**ATTORNEYS FOR PLAINTIFF**

FILED DATE: 3/20/2019 12:54 PM   2019CH03620

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on March 20, 2019, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

/s/ *Ryan F. Stephan*

FILED
3/21/2019 1:53 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH03620

FILED DATE: 3/21/2019 1:53 PM   2019CH03620

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| RAVEN FOX, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2019-CH-03620 |
| v. | ) ) | |
| DAKKOTA INTEGRATED SYSTEMS, LLC, | ) ) | Hon. Judge Thomas R. Allen |
| Defendants. | ) ) ) | |

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on **Monday, April 8, 2019 at 10:00 a.m.** or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Thomas R. Allen, or any judge sitting in his stead, in the courtroom usually occupied by him at 50 W. Washington St., Chicago, Illinois, Room 2302, and present **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND REQUEST FOR DISCOVERY ON CERTIFICATION ISSUES.**

Respectfully submitted,

*/s/ Ryan F. Stephan*
Ryan F. Stephan
Attorney for Plaintiff
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
Telephone: 312-233-1550
rstephan@stephanzouras.com

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on March 21, 2019, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

/s/ Ryan F. Stephan

FILED
3/21/2019 12:17 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH03620

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED DATE: 3/21/2019 12:17 PM    2019CH03620

| | |
|---|---|
| RAVEN FOX, individually, and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>DAKKOTA INTEGRATED SYSTEMS, LLC )<br><br>Defendant. ) | Case No. 2019-CH-03620 |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND REQUEST FOR DISCOVERY ON CERTIFICATION ISSUES

Plaintiff Raven Fox ("Plaintiff") alleges that Defendant Dakkota Integrated Systems, LLC

("Dakkota" or "Defendant") systematically violated the Biometric Information Privacy Act

("BIPA"), 740 ILCS 14/1 *et seq*. This case is well suited for class certification pursuant to 735

ILCS 5/2-801. Specifically, Plaintiff seeks to certify a class consisting of hundreds of former and

current similarly-situated employees who worked for Dakkota in the State of Illinois who had their

hand geometry data unlawfully used, stored, and disclosed by Defendant during the applicable

statutory period in violation of BIPA. The question of liability is a legal question that can be

answered in one fell swoop. As Plaintiff's claims and the claims of similarly-situated individuals

all arise from Defendant's uniform policies and practices, they satisfy the requirement of 735 ILCS

5/2-801 and should be certified.

Plaintiff moves for class certification to protect members of the proposed class, individuals

whose proprietary and legally protected personal and private biometric data was invaded by

Defendant. Plaintiff believes that the evidence and argumentation submitted within this motion are

sufficient to allow the class to be certified now. However, in the event the court (or Defendant) wishes for the parties to undertake formal discovery prior to the Court's consideration of this motion, Plaintiff requests that the Court allow her to supplement this briefing and defer the response and reply deadlines.

## I.   **RELEVANT BACKGROUND**

### A.  **The Biometric Information Privacy Act**

Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became wary of this then-growing, yet unregulated, technology. *See* 740 ILCS 14/5.

The Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. was enacted in 2008, arising from concerns that these experimental uses of technologies created a "very serious need of protections for the citizens of Illinois when it comes to biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. Under the Act, it is unlawful for a private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless it first:

> (1) Informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) Informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) Receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b).

2

FILED DATE: 3/21/2019 12:17 PM 2019CH03620

Although there may be benefits with using biometrics in the workplace, there are also serious risks. Unlike ID badges – which can be changed or replaced if stolen or compromised – hand geometry is a unique, permanent biometric identifier associated with each individual. These biometrics are biologically unique to the individual; once compromised, the individual has *no* means by which to prevent identity theft, unauthorized tracking, or other unlawful or improper use of this information. This exposes individuals to serious and irreversible privacy risks. For example, if a biometric database is hacked, breached, or otherwise exposed – as in the recent Equifax, Home Depot, Google+ and Facebook/Cambridge Analytica data breaches– individuals have no means to prevent the misappropriation and theft of their proprietary biometric makeup. A showing of actual damages is not necessary in order to state a claim under BIPA. When an entity "fails to adhere to the statutory procedures … the right of the individual to maintain [his or] her biometric privacy vanishes into thin air." *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 34 (internal quotations omitted) (quoting *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 953 (N.D. Cal. 2018)). Thus, recognizing the need to protect its citizens from harms like these, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

### B. Factual Allegations

Plaintiff filed this class action against Defendant on March 20, 2019, to redress Defendant's unlawful collection, use, storage, and disclosure of Dakkota's employees' biometric information under BIPA. In her Complaint, Plaintiff provided detailed allegations that Dakkota's employees were, and continue to be, universally required to scan their hands for enrollment in at least one employee database as a condition of their employment, but are not: (1) provided a publicly available retention schedule or guidelines for permanent destruction of the biometric data by

3

Defendant, as required by BIPA; (2) informed in writing of the purpose(s) and length of time for which hand geometry data is being collected, stored, and used by Defendant; (3) provided (nor did they execute) a written release for Defendant in order to collect, store, or use their hand geometry, as required by BIPA; or (4) asked for consent before disclosing, redisclosing, or otherwise disseminating their hand geometry data to a third party, as required by BIPA. *See* Compl. ¶ 10.

Plaintiff worked for Dakkota as a Team Lead from February 2012 until January 28, 2019 in its facility located at 12525 S. Carondolet Avenue, Chicago, Illinois, 60633. *Id.* at ¶ 40. As a condition of employment with Dakkota, Plaintiff was required to scan her hand each time she clocked in and out of work. *Id.* at ¶ 41. Defendant subsequently stored Plaintiff's fingerprint data in its employee database(s). *Id.* at ¶ 42.

However, Defendant failed and continues to fail to inform Plaintiff and other employees of the extent of the purposes for which they collect individuals' sensitive biometric data or to whom the data is disclosed. *Id.* at ¶¶ 10, 32-33, 44, 84. Defendant failed to provide their employees, including Plaintiff, with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying individuals' hand geometry data when the initial purpose for collecting or obtaining their hand geometry data is no longer relevant, as required by BIPA. *Id.* at ¶¶ 10, 33, 35, 45, 53, 74, 75. Dakkota employees, including Plaintiff, are not told what might happen to their biometric data if and when Defendant merges with another company, or, worse, if and when Defendant's entire business folds. *Id.* at ¶¶ 36-37. Since Defendant neither publishes a BIPA-mandated data retention policy nor discloses the purposes for its collection of biometric data, Dakkota employees, including Plaintiff, have no idea to whom Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. *Id.* at ¶¶ 10, 32, 37, 93. Nor are employees told to whom Defendant currently discloses their biometric data or what might

4

happen to their biometric data in the event of a merger or a bankruptcy. *Id.* at ¶ 37. Finally, Defendant never secured a written release executed by any of Dakkota's employees, including Plaintiff, permitting it to collect, store, use, and disseminate employees' biometric data, as required by BIPA. *Id.* at ¶¶ 10, 20, 32, 46, 53, 83.

Accordingly, Defendant's practices violate BIPA. As a result of Defendant's violations, Plaintiff and other similarly-situated individuals were subject to Defendant's common and uniform policies and practices and were victims of its scheme to unlawfully collect, store, use, and disseminate Plaintiff's and all other similarly-situated individuals' biometric data in direct violation of BIPA. As a result of Defendant's multiple violations of BIPA, Plaintiff and all other similarly-situated individuals suffered an invasion of privacy and other damages.

Plaintiff now seeks class certification for the following similarly-situated individuals, defined as:

> All individuals working for Dakkota Integrated Systems in the State of Illinois who had their hand geometry collected, captured, received, obtained, maintained, stored or disclosed by Defendant during the applicable statutory period.

Given Defendant's standard practices defined above and the straightforward legal questions presented in this case, Plaintiff now moves for class certification. Notably, this motion is being filed shortly after the Complaint was filed and before Defendant has responded. The parties have not discussed settlement, neither settlement offers nor demands have been made, and a scheduling order has not been issued. For the reasons discussed herein, Plaintiff's request should be granted.

## II.   STANDARD FOR CLASS CERTIFICATION

"The basic purpose of a class action is the efficiency and economy of litigation." *CE Design Ltd. v. C & T Pizza, Inc.*, 2015 IL App. (1st) 131465, ¶ 9 (Ill. App. Ct. May 8, 2015) (citing *Miner*

5

*v. Gillette Co.*, 87 Ill. 2d 7, 14 (1981)). "In determining whether to certify a proposed class, the trial court accepts the allegations of the complaint as true and should err in favor of maintaining class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (2007)). Under Section 2-801 of the Code of Civil Procedure, a class may be certified if the following four requirements are met:

> (1) the class is so numerous that a joinder of all members is impracticable;
>
> (2) there are questions of fact or law common to the class that predominate over any questions affecting only individual members;
>
> (3) the representative parties will fairly and adequately protect the interest of the class; and
>
> (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

*See Smith v. Illinois Cent. R.R. Co.*, 223 Ill. 2d 441, 447 (2006) (citing 735 ILCS 5/2-801). Notably, "[a] trial court has broad discretion in determining whether a proposed class meets the requirements for class certification." *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 9 (citing *Ramirez*, 378 Ill. App. 3d at 53). Here, the allegations and facts in this case amply demonstrate that the four certification factors are met.

## III.   ARGUMENT

Plaintiff's claims here are especially suited for class certification because Defendant treated all employees identically for the purposes of applying BIPA. All of the putative class members in this case were uniformly subjected to the same illegal and unlawful collection, storage, use, and dissemination of their biometric data that was required as a condition of employment throughout the class period. Plaintiff meets each of the statutory requirements for maintenance of this suit as a class action. Thus, the class action device is ideally suited and is far superior to burdening the

FILED DATE: 3/21/2019 12:17 PM 2019CH03620

Court with many individual lawsuits to address the same issues, undertake the same discovery, and rely on the same testimony.

**A.     The Class Is So Numerous That Joinder of All Members Is Impracticable.**

Numerosity is not dependent on a plaintiff setting forth a precise number of class members or a listing of their names. *See Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 771 (2d Dist. 2008) ("Of course, plaintiffs need not demonstrate a precise figure for the class size, because a good-faith, non-speculative estimate will suffice; rather, plaintiffs need demonstrate only that the class is sufficiently numerous to make joinder of all of the members impracticable.") (internal citations omitted); *Hayna v. Arby's, Inc.*, 99 Ill. App. 3d 700, 710-11 (1st Dist. 1981) ("It is not necessary that the class representative name the specific individuals who are possibly members of the class."). Courts in Illinois generally find numerosity when the class is comprised of at least 40 members. *See Wood River Area Dev. Corp. v. Germania Fed. Sav. Loan Ass'n*, 198 Ill. App. 3d 445, 450 (5th Dist. 1990).

In the present case, there can be no serious dispute that Plaintiff meets the numerosity requirement. The class of potential plaintiffs is sufficiently large to make joinder impracticable.[1] As a result of Defendant's violations of BIPA, Plaintiff and all similarly-situated individuals were subjected to Defendant's common and uniform policies and practices and were victims of Defendant's schemes to unlawfully collect, store, use, and disseminate their extremely personal and private biometric data in direct violation of BIPA. As a result of Defendant's violations of the Act, Plaintiff and all other similarly-situated individuals suffered an infringement of the rights afforded them under the law. *Rosenbach*, 2019 IL 123186, ¶ 38. The precise number in the class

---

[1]     Upon information and belief, Defendant employs hundreds of workers in the state of Illinois, many of whom are members of the class.

cannot be determined until discovery records are obtained from Defendant. Nevertheless, class membership can be easily determined by reviewing Defendant's records. A review of Defendant's files regarding the collection, storage, use, and dissemination of Dakkota's employees' biometric data performed during the class period is all that is needed to determine membership in Plaintiff's proposed class. *See e.g., Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 233 (1st Dist. 2010) (reversing Circuit Court's denial of class certification and holding that class was certifiable over defendant's objection that "the proposed class was not ascertainable, because the process of reviewing defendant's transaction files to determine class membership would be burdensome"); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539-40 (6th Cir. 2012)[2] (rejecting the argument that manual review of files should defeat certification, agreeing with district court's reasoning that, if manual review was a bar, "defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained," and citing numerous courts that are in agreement, including *Perez v. First Am. Title Ins. Co.*, 2009 WL 2486003, at *7 (D. Ariz. Aug. 12, 2009) ("Even if it takes a substantial amount of time to review files and determine who is eligible for the [denied] discount, that work can be done through discovery")). Once Defendant's records are obtained, the Court will know the precise number of persons affected.

Absent certification of this class action, Dakkota's employees may never know that their legal rights have been violated, and as a result, may never obtain the redress to which they are entitled under BIPA. Illinois courts have noted that denial of class certification where members of the putative class have no knowledge of the lawsuit may be the "equivalent of closing the door of

---

[2]    "Section 2-801 is patterned after Rule 23 of the Federal Rules of Civil Procedure and, because of this close relationship between the state and federal provision, 'federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois.'" *Cruz*, 383 Ill. App. 3d at 761 (quoting *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill.2d 100, 125 (2005)).

FILED DATE: 3/21/2019 12:17 PM  2019CH03620

justice" on the victims. *Wood River Area Dev. Corp. v. Germania Fed. Sav. & Loan Assn.*, 198 Ill.App.3d 445, 452 (5th Dist. 1990). Further, recognizing the need to protect its citizens from harms such as identity theft, Illinois enacted BIPA specifically to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information. A class action would help ensure that Plaintiff and all other similarly-situated individuals have a means of redress against Defendant for its widespread violations of BIPA.

**B.** **Common Questions Of Law And Fact Exist That Predominate Over Any Questions Solely Affecting Individual Members Of The Class.**

Courts analyze commonality and predominance under Section 2-801 by identifying the substantive issues that will control the outcome of the case. *See Bemis v. Safeco Ins. Co. of Am.*, 407 Ill. App. 3d 1164, 1167 (5th Dist. 2011); *Cruz*, 383 Ill. App. 3d at 773. The question then becomes whether those issues will predominate and whether they are common to the class, meaning that "favorable adjudication of the claims of the named plaintiffs will establish a right of recovery in other class members." *Cruz*, 383 Ill. App. 3d at 773. As stated by the Court of Appeals, the question is will "common . . . issues be the subject of the majority of the efforts of the litigants and the court[?]" *Bemis*, 407 Ill. App. 3d at 1168. The answer here is "yes."

At the heart of this litigation is Defendant's culpable conduct under BIPA. The issues are simple and straightforward legal questions that plainly lend themselves to class-wide resolution. Notwithstanding the clear and unequivocal requirements of the law, Defendant disregarded Plaintiff's and other similarly-situated individuals' statutorily-protected privacy rights and unlawfully collected, stored, used, and disseminated their biometric data in direct violation of BIPA. Specifically, Defendant has violated and continues to violate BIPA because it failed and continues to fail to: (1) inform Plaintiff or the putative class in writing of the specific purpose(s) and length of time for which their hand geometry data was being collected, stored, used, and

FILED DATE: 3/21/2019 12:17 PM 2019CH03620

disseminated as required by BIPA; (2) provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the putative class's hand geometry data, as required by BIPA; and (3) receive a written release from Plaintiff or the putative class to collect, capture, or otherwise obtain their hand geometry data, as required by BIPA. Defendant treated the entire proposed class in precisely the same manner, resulting in identical violations of BIPA. These common practices create common issues of law and fact. In fact, the legality of Defendant's collection, storage, use, and dissemination of Plaintiff's and the putative class's biometric data is the focus of this litigation.

Indeed, once this Court determines whether Defendant's practices of collecting, storing, using and disseminating individuals' biometric data without adhering to the specific requirements of BIPA constitutes violations thereof, liability for the claims of class members will be determined in one stroke. The material facts and issues of law are substantially the same for the members of the class, and therefore these common issues could be tried such that proof as to one claimant would be proof as to all members of the class. This alone establishes predominance. The only remaining questions will be the proper measure of damages and injunctive relief, which in and of themselves are questions common to the class. A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act"). Accordingly, a favorable adjudication of the Plaintiff's claims in this case will establish a right of recovery to all other class members, and thus the commonality and predominance requirements weigh in favor of certification of the class.

**C.    The Named Plaintiff And Class Counsel Are Adequate Representatives Of The Class.**

FILED DATE: 3/21/2019 12:17 PM   2019CH03620

When evaluating adequacy, courts look to whether the named plaintiff has the same interests as those of the class and whether he or she will fairly represent them. *See CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶ 16. In this case, Plaintiff's interest arises from statute. The class representative, Raven Fox, is a member of the proposed class and will fairly and adequately protect the class's interests. Plaintiff, as a condition of employment, was required to have her hand scanned so Defendant could use her hand geometry data as an authentication method to track her time. Defendant subsequently stored Plaintiff's hand geometry data in its employee database(s). Plaintiff has never been informed of the specific limited purposes (if any) or length of time for which Defendant collected, stored, used, or disseminated her biometric data. Plaintiff has never been informed of any biometric data retention policy developed by Defendant, nor has she ever been informed whether Defendant will ever permanently delete her hand geometry data. Finally, Plaintiff has never been provided, nor did she ever sign, a written release allowing Defendant to collect, store, use, or disseminate her hand geometry data. Thus, Plaintiff was a victim of the same uniform policies and practices of Defendant as the individuals she seeks to represent and is not seeking any relief that is potentially antagonistic to other members of the class. What is more, Plaintiff has the interests of those class members in mind, as demonstrated by her willingness to sue on a class-wide basis and step forward as the class representative, which subjects her to discovery. (*See* Exhibit A – Affidavit of Raven Fox.) This qualifies her as a conscientious representative plaintiff and satisfies the adequacy of representation requirement.

Proposed Class Counsel, Stephan Zouras, LLP, will also fairly and adequately represent the class. Proposed Class Counsel are highly qualified and experienced attorneys. (*See* Exhibit B – Affidavit of Ryan F. Stephan and the Firm Resume attached thereto as Exhibit B-1). Stephan Zouras, LLP, are recognized attorneys in class action lawsuits and have been designated as class

counsel in numerous class actions in state and federal courts. (*See* Exhibit B, Exhibit B-1). Thus, proposed Class Counsel, too, are adequate and have the ability and resources to manage this lawsuit.

**D.    A Class Action Is The Appropriate Method For Fair And Efficient Adjudication Of This Controversy.**

Finally, a class action is the most appropriate method for the fair and efficient adjudication of this controversy, rather than bringing individual suits which could result in inconsistent determinations and unjust results. "It is proper to allow a class action where a defendant is alleged to have acted wrongfully in the same basic manner toward an entire class." *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corporation*, 345 Ill. App. 3d 992, 1003 (2d Dist. 2004). "The purported class representative must establish that a successful adjudication of its individual claims will establish a right of recovery or resolve a central issue on behalf of the class members." *Id.*

Here, Plaintiff's claim stems from Defendant's common and uniform policies and practices, resulting in common violations of BIPA for all members of the class. Thus, class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. *Wenthold v. AT&T Technologies, Inc.*, 142 Ill. App. 3d 612 (1st Dist. 1986). Without a class, the Court would have to hear dozens, if not hundreds, of additional individual cases raising identical questions of liability. Moreover, class members are better served by pooling resources rather than attempting to litigate individually. *CE Design Ltd.*, 2015 IL App. (1st) 131465, ¶¶ 28-30 (certifying TCPA class where statutory damages were alleged and rejecting arguments that individual lawsuits would be superior). In the interests of justice and judicial efficiency, it is desirable to concentrate the litigation of all class members' claims in a

FILED DATE: 3/21/2019 12:17 PM   2019CH03620

single forum.  For all of these reasons, the class action is the most appropriate mechanism to adjudicate the claims in this case.

**E.**     **In The Event The Court Or Defendant Seek More Factual Information Regarding This Motion, The Court Should Allow Supplemental And Deferred Briefing Following Discovery.**

There is no meaningful need for discovery for the Court to certify a class in this matter; Defendant's practices and policies are uniform. If, however, the Court wishes for the Parties to engage in discovery, the Court should keep the instant motion pending during the discovery period, allow Plaintiff a supplemental brief, and defer Defendant's response and Plaintiff's reply. Plaintiff is moving as early as possible for class certification in part to avoid the "buy-off problem," which occurs when a defendant seeks to settle with a class representative on individual terms in an effort to moot the class claims asserted by the class representative. Plaintiff is also moving for class certification now because the class should be certified, and because no meaningful discovery is necessary to establish that fact. The instant motion is far more than a placeholder or barebones memorandum. Rather, Plaintiff's full arguments are set forth based on the facts known at this extremely early stage of litigation. Should the Court wish for more detailed factual information, the briefing schedule should be extended.

**IV.**     **Conclusion**

For the reasons stated above, Plaintiff respectfully requests that the Court enter an Order: (1) certifying Plaintiff's claims as a class action; (2) appointing Plaintiff Raven Fox as Class Representative; (3) appointing Stephan Zouras, LLP as Class Counsel; and (4) authorizing court-facilitated notice of this class action to the class. In the alternative, this Court should allow discovery, allow Plaintiff to supplement this briefing, and defer response and reply briefs.

13

FILED DATE: 3/21/2019 12:17 PM   2019CH03620

Date:   March 21, 2019

Respectfully Submitted,

*/s/ Ryan F. Stephan*
Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
Firm ID: 43734

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on March 21, 2019, I electronically filed the attached with the Clerk of the Court using the electronic filing system, which will send such filing to all attorneys of record.

*/s/ Ryan F. Stephan*

FILED
3/21/2019 12:17 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH03620

# Exhibit A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| RAVEN FOX, individually, and on behalf of all others similarly situated, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DAKKOTA INTEGRATED SYSTEMS, LLC | ) |
| | ) |
| Defendant. | ) |

Case No. 2019-CH-03620

## AFFIDAVIT OF RAVEN FOX

I, Raven Fox, being first duly cautioned, swear and affirm as follows:

1. I am over the age of 18 and competent to testify.

2. I am the Named Plaintiff and proposed Class Representative in this case.

3. I understand what it means to be a class representative.  As a class representative, I am looking out for the interests of the other class members.

4. I do not have any conflicts with the class members because they were treated like I was with respect to this lawsuit.  I have their interests in mind, as well as my own, in bringing this lawsuit.

FURTHER YOUR AFFIANT SAYETH NOT.

Date: 3/21/2019

DocuSigned by:

*Raven Fox*

98CD2563D5734F1...

Raven Fox

FILED
3/21/2019 12:17 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH03620

# Exhibit B

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| RAVEN FOX, individually, and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Case No. 2019-CH-03620 |
| v. ) ) | |
| DAKKOTA INTEGRATED SYSTEMS, LLC ) ) | |
| Defendant. ) | |

I, Ryan F. Stephan, being first duly cautioned, swear and affirm as follows:

1. I am one of Plaintiff's Counsel in the above-referenced matter.

2. I submit this Affidavit in support of Plaintiff's Motion for Class Certification and Request for Discovery on Certification Issues.

3. I am a partner of the law firm of Stephan Zouras, LLP. Attached hereto as Exhibit 1 is a true and correct copy of the firm's resume.


FURTHER YOUR AFFIANT SAYETH NOT.


Date: March 21, 2019                    _/s/ Ryan F. Stephan_____
                                        Ryan F. Stephan

Subscribed and sworn to
before me on this 21st day of
March, 2019

Notary Public



KERRY D BOWERS
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
March 01, 2021

FILED DATE: 3/21/2019 12:17 PM   2019CH03620

# Exhibit B-1



**STEPHANZOURAS, LLP**
ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

# FIRM PROFILE

**STEPHAN ZOURAS, LLP** is a national law firm which concentrates on helping our clients in complex class and individual litigation. The firm is widely recognized for its leadership, skill, integrity and experience litigating wage and hour law and other employment disputes, mass torts and catastrophic personal injury, consumer protection, cybersecurity, products liability and other complex litigation. We are routinely appointed lead or co-lead counsel in high-stakes, groundbreaking, rapidly-developing areas with far-reaching impact.

Our Chicago-based firm takes pride in litigating cases and getting the best possible results in federal and state courts throughout the United States at both the trial and appellate levels. The firm's two founding partners, James B. Zouras and Ryan F. Stephan, have successfully prosecuted claims ranging from individual wrongful death and other catastrophic injury cases to complex, multi-district class and collective actions which have collectively resulted in a recovery of more than $100,000,000 for over 100,000 individuals. Stephan Zouras, LLP has "substantial class action experience [and] have secured multi-million-dollar class recoveries...." *Bhattacharya v. Capgemini North America, Inc.*, 324 F.R.D. 353, 363 (N.D. Ill. 2018) (Kennelly, J.)

# PRINCIPAL ATTORNEYS

**JAMES B. ZOURAS** is a founding principal of Stephan Zouras, LLP. Dedicating his entire career to combating corporate abuse and injustice, Jim has helped thousands of people recover tens of millions of dollars in damages in individual and class actions arising under federal wage and hour laws including the Fair Labor Standards Act ("FLSA") and comparable state wage laws, other complex litigation, and catastrophic personal injury actions involving wrongful death, vehicle crashes, products liability, premises liability and construction negligence. Jim has been appointed lead or co-lead counsel on dozens of contested class actions throughout the United States. He has successfully tried over a dozen jury trials and argued over 14 appeals as lead appellate counsel before the federal and state appellate courts. In 2000, Jim was named among the *Chicago Daily Law Bulletin's* "Top 40 Lawyers Under Age 40," one of the youngest lawyers ever bestowed that honor. Jim and his cases have been profiled by numerous media outlets including the Chicago Tribune, the Chicago Sun-Times, Bloomberg BNA, Billboard Magazine and TMZ. Jim has also been interviewed by CBS Consumer Watch. Jim is frequently invited as a speaker at national class action litigation seminars. Jim is a 1995 graduate of DePaul University College of Law, where he served as Editor of the Law Review and graduated in the top 10% of his class.

**RYAN F. STEPHAN** is a founding principal of Stephan Zouras, LLP. Throughout his career, Ryan has been a passionate advocate for employee rights, and has helped thousands of clients recover damages in unpaid overtime, employment disputes, business litigation, products liability and personal injury cases. Ryan has successfully tried cases to verdict including obtaining a $9,000,000 verdict on behalf of 200 employees who were misclassified and denied overtime pay. Ryan has also served as lead or co-lead counsel on dozens of complex class and collective action cases involving wage and hour matters and has helped recover damages for tens of thousands of wronged employees. In these cases, Ryan has helped establish precedent in wage and hour law, forced major corporations to change unlawful employment practices and helped recover tens of millions of dollars in unpaid wages for his clients. Ryan and his cases have been profiled by numerous media outlets including Good Morning America, Fortune, ESPN, Fox News, The Guardian, The New York Times, Think Progress, USA Today and Vice Sports. Ryan is a 2000 graduate from Chicago Kent College of Law

CHICAGO    •    PHILADELPHIA    •    CHARLOTTE

# STEPHANZOURAS, LLP
ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

FILED DATE: 3/21/2019 12:17 PM  2019CH03620

Ryan and Jim are admitted to the United States Supreme Court as well as the Trial Bar of the United States District Court for the Northern District of Illinois.  In addition, they have been admitted or admitted *pro hac vice* to prosecute class actions in the Southern and Eastern Districts of New York, the District of New Jersey, the Eastern and Middle Districts of Pennsylvania, the Western District of North Carolina, the Superior Court for the State of California, the Central District of Illinois, the District of Minnesota the Eastern District of Michigan, the Eastern District of Missouri, the District of Maryland, the Southern District of Ohio, the Northern, Middle and Southern Districts of Florida, the Northern District of Texas, the District of Massachusetts, the District of Minnesota, the First Judicial District of Pennsylvania, the Western District of Washington and the Southern and Northern Districts of Iowa.

In every consecutive year since 2009, *Chicago Magazine's* Super Lawyer Section selected both Jim and Ryan as two of the top attorneys in Illinois, a distinction given to no more than 5% of the lawyers in the state.

## PARTNERS

**ANDREW C. FICZKO** is a partner of Stephan Zouras, LLP.  A tireless fighter for working people, Andy has spent his entire professional career litigating on behalf of employees in class and collective actions nationwide.  Andy has helped thousands of clients recover damages in cases involving unpaid minimum and overtime wages and other benefits.  Andy served as the second chair in two major federal jury trials to verdict on behalf of Plaintiffs in wage and hour matters and one state jury trial to verdict on behalf of Plaintiffs in a breach of contract matter. A 2009 graduate from Drake University Law School in 2009, Andy is admitted to the Trial Bar of the United States District Court for the Northern District of Illinois has been admitted *pro hac vice* to the Southern District of New York, the Southern and Northern Districts of Iowa, District of Massachusetts, Eastern District of Pennsylvania, and the Western District of Washington.  In every consecutive year since 2014, Andy has been recognized by Chicago Magazine's Super Lawyer section as a Rising Star, a distinction given to no more than 2.5% of Illinois lawyers.

**TERESA M. BECVAR** is a partner of Stephan Zouras, LLP.  A steadfast advocate for individual rights, Teresa has helped thousands of clients hold corporations accountable in employment and consumer protection cases. Teresa has extensive experience in a wide range of employment cases, including wage and hour class and collective actions and employment discrimination. Teresa is a 2013 graduate of Chicago-Kent College of Law, where she served as Editor of the Law Review and graduated in the top 15% of her class.  Teresa has been admitted *pro hac vice* to the Eastern and Southern Districts of New York, the Western District of Washington, the Middle District of Florida and the Central District of California.  In every consecutive year since 2016, Teresa has been recognized by Chicago Magazine's Super Lawyer section as a Rising Star, a distinction given to no more than 2.5% of Illinois lawyers.

**CATHERINE T. MITCHELL** is a partner of Stephan Zouras, LLP who graduated from The John Marshall Law School in 2015. Catherine litigates on behalf of Stephan Zouras, LLP's clients in both class action and individual litigation, representing people in a wide-range of legal disputes, including unpaid wages, employee misclassification, mass torts, antitrust, and consumer fraud. Catherine is an active member of the Women's Bar Association of Illinois and the Young Lawyers Society of the Chicago Bar Association, and served as a Chapter Editor for the Second Edition of BNA's Age Discrimination in Employment Act Treatise. Catherine is admitted to practice in Illinois, the District of Colorado, the Eastern District of Wisconsin and has been admitted *pro hac vice* to the Southern and Eastern District of New York, the District of Florida-Tampa Division, the Southern District of Iowa and the Eastern District of North Carolina. Catherine

# STEPHANZOURAS, LLP
ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

earned her Bachelor's Degree from Saint Mary's College where she was a member of the Dean's list and served as a Member Counselor in the Business Enterprise Law Clinic. Catherine is currently an active member of the Women's Bar Association as well as a Director on The John Marshall Law School Alumni Association's Board of Directors.

## ASSOCIATE ATTORNEYS

**HALEY R. JENKINS** graduated *cum laude* from Chicago-Kent College of Law in 2016. Haley litigates on behalf of Stephan Zouras, LLP's clients in both class action and individual litigation. A spirited advocate, Haley represents clients in legal disputes involving unpaid wages, employee misclassification, antitrust, consumer fraud, whistleblower actions, and *qui tam* cases. She is currently a member of the legal team advocating for clients' biometric privacy rights in cutting-edge cases against employers and biometric device manufacturers that unlawfully collect, store, use and disseminate employees' and consumers' biometrics data. Haley is admitted to practice in Illinois and the District of Colorado and has been admitted *pro hac vice* to the Middle District of Pennsylvania. Haley graduated from the University of Illinois at Urbana-Champaign in 2013 where she majored in English.

**ANNA M. CERAGIOLI** earned her Juris Doctor from Chicago-Kent College of Law where she was named to the Dean's List and elected President of the Moot Court Honor Society. She was one of only twelve graduating students inducted into the Chicago-Kent Bar & Gavel Society. Anna is a skilled and dedicated advocate for individuals and groups of people who have been injured, deprived of earned wages or otherwise mistreated by employers. She has worked tirelessly on an array of individual and class actions lawsuits involving unpaid wages, employee misclassification, unlawful credit checks and consumer fraud. Anna received her undergraduate degree from Marquette University where she double-majored in Writing Intensive English and Politics in Law.

## OF COUNSEL

**DAVID J. COHEN,** a highly skilled and successful class-action attorney, joined Stephan Zouras, LLP in April 2016 and manages our Philadelphia office. Dave has spent his entire career fighting to protect the rights of thousands of employees, consumers, shareholders, and union members. Before joining Stephan Zouras, Dave worked on, and ran, dozens of significant antitrust, consumer, employment and securities matters for four highly-regarded Philadelphia firms. Before joining the private sector, Dave completed a unique clerkship with the Hon. Stephen E. Levin in the Philadelphia Court of Common Pleas, during which he not only helped to develop a respected and efficient system for the resolution of the Court's class action cases, but also contributed to several well-regarded works on class actions. Dave earned a J.D. from the Temple University School of Law in 1994. While attending law school, Dave was awarded the Barristers Award for excellence in trial advocacy and worked as a teaching assistant for Hon. Legrome Davis (E.D. Pa.) as part of Temple's award-winning Integrated Trial Advocacy program. Dave graduated with honors from the University of Chicago in 1991.

Dave is admitted to practice in the United States Court of Appeals for the Third Circuit, the United States Court of Appeals for the Sixth Circuit, the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the Middle District of Pennsylvania, the United States District Court for the Western District of

FILED DATE: 3/21/2019 12:17 PM   2019CH03620

FILED DATE: 3/21/2019 12:17 PM 2019CH03620

# STEPHANZOURAS, LLP
## ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

Pennsylvania, the United States District Court for the District of New Jersey and the state courts of Pennsylvania and New Jersey. He is a member of the American and Philadelphia Bar Associations.

**PHILIP J. GIBBONS, JR.**, a highly-accomplished Plaintiff's class action attorney in his own right, became of counsel to Stephan Zouras, LLP in June 2017. Phil focuses entirely on employment law, with an emphasis on helping employees recover unpaid wages including overtime. Phil began his legal career with a large national law firm, representing and counseling corporations and employers. Since 2001, Phil has exclusively represented employees. Phil is recognized by his peers as a highly skilled employment lawyer. He is listed in Best Lawyers in America and Super Lawyers. In addition, he has a perfect 10.0 rating on Avvo.com and an "A/V" rating with Martindale Hubble, which is the highest rating an attorney can receive. Phil has extensive experience litigating single and multi-plaintiff wage and hour lawsuits under the Fair Labor Standards Act, recovering unpaid overtime and minimum wages for thousands of employees throughout the United States.

Phil is admitted to practice in North Carolina, Indiana, Seventh Circuit Court of Appeals, Sixth Circuit Court of Appeals, Third Circuit Court of Appeals, Tenth Circuit Court of Appeals, U.S. District Courts Western District North Carolina, Middle District North Carolina, Southern District of Indiana, Northern District of Indiana, and Eastern District of Michigan.

## REPRESENTATIVE TRIALS, VERDICTS AND JUDGMENTS

**Franco, et al. v. Ideal Mortgage Bankers, d/b/a Lend America**  12/14/17 – Trial Court Judgment
*No. 07-cv-3956 (United States District Court for the Eastern District of New York)*
The Court entered a $15.2 million judgment on behalf of several hundred loan officers who were deprived of minimum wages and overtime in violation of federal and state law.

**Frisari v. DISH Network**  8/25/16 – Arbitration Judgment
*No. 18-160-001431-12 (AAA Arbitration)*
The Arbitrator certified and granted final judgment in excess of seven figures for a class of over 1,000 New Jersey inside sales associates who performed work before and/or after their shifts without pay and were not paid the proper overtime rate when they worked in excess of 40 hours a week.

**Huskey v. Ethicon Inc.**  9/10/2014 – Jury Verdict
*No. 2:12-cv-05201 (United States District Court for the Southern District of West Virginia)*
Stephan Zouras, LLP helped secure a $3,270,000.00 jury verdict in one of the bell-weather trial cases in the multi-district litigation against Johnson & Johnson's Ethicon unit for defective design, failure to warn and negligence related to transvaginal mesh device.

**Lee v. THR**  5/22/14 – Trial Court Judgment
*No. 12-cv-3078 (United States District Court for the Central District of Illinois)*
As a result of the efforts of class counsel Stephan Zouras, LLP, the Court entered a judgment for a class of employees given job titles such as "Buyers," "Auditors" and "Managers" for unpaid overtime in the sum of $12,207,880.84.

**Vilches et al. v. The Travelers Companies, Inc.**  12/12/12 - Arbitration Judgment
*No. 11-160-000355-11 (American Arbitration Association)*

# STEPHANZOURAS, LLP
## ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

Following a contested evidentiary hearing, Stephan Zouras, LLP secured a significant monetary award on behalf of a group of insurance appraiser employees seeking unpaid earned overtime under the FLSA.

**Kyriakoulis, at al. v. DuPage Health Center**                    **11/8/12 - Jury Verdict**
*No. 10-cv-7902 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved a favorable jury verdict on behalf of several medical assistants deprived of minimum and overtime wages in violation of federal and Illinois law.

**Smith v. Safety-Kleen Systems, Inc.**                    **7/11/12 - Jury Verdict**
*No. 10-cv-6574 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved a favorable jury verdict on behalf of a chemical handler deprived of overtime wages in this donning and doffing action brought under the FLSA.

**Wong v. Wice Logistics**                    **1/30/12 - Jury Verdict**
*No. 08 L 13380 (Circuit Court of Cook County, Illinois)*
Stephan Zouras, LLP recovered unpaid commissions and other damages for Plaintiff based on her claims under the Illinois Wage Payment and Collection Act.

**Daniels et al. v. Premium Capital Financing**                    **10/18/11 - Jury Verdict**
*No. 08-cv-4736 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP was appointed lead class and trial counsel and achieved a jury verdict in excess of $9,000,000.00 on behalf of over 200 loan officers who were deprived of minimum wages and overtime pay.

**Ferrand v. Lopas**                    **5/22/01 - Jury Verdict**
*No. 00 L 2502 (Circuit Court of Cook County, Law Division, State of Illinois)*
Jury verdict in excess of available liability insurance policy limits entered in favor of seriously-injured pedestrian, resulting in liability against insurance carrier for its bad faith refusal to tender the policy limits before trial.

## REPRESENTATIVE RESOLVED CLASS AND COLLECTIVE ACTIONS

**Courts nationwide have appointed the firm as lead or co-lead counsel in numerous class and collective actions in which they have collectively secured over one hundred million dollars in verdicts and settlements including:**

**Moseman v. U.S. Bank National Association**                    **1/07/19 – Final Approval**
*No. 17-cv-00481 (United States District Court for the Western District of North Carolina)*
As lead counsel, Stephan Zouras, LLP achieved a class wide settlement on behalf of individuals employed as AML/BSA Preliminary Investigators who worked in excess of 40 hours per week and were not paid proper overtime compensation.

**Ivy v. Adventist Midwest Health**                    **11/14/18 – Final Approval**
*No. 16-cv-7606 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved a six-figure class settlement on behalf of Home Health Clinicians who worked in excess of 40 hours per week and were not paid overtime.

**Bhattacharya v. Capgemini, et al.**                    **11/13/18 – Final Approval**
*No. 16-cv-07950 (United States District Court for the Northern District of Illinois)*
Final approval for class settlement in the amount of $990,000.00 was granted and awarded to approximately 900 Indian

**STEPHANZOURAS**, LLP

ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

FILED DATE: 3/21/2019 12:17 PM 2019CH03620

national participants of Capgemini's Group Health Plan based on alleged violations of the Employee Retirement Income Security Act ("ERISA").

**Carver v. Presence Health Network, et al.**        **7/10/18 – Final Approval**
*No. 15-cv-02905 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP helped achieve final approval of a seven-figure class settlement on behalf of participants and beneficiaries of benefit plans sponsored by Presence Health based on alleged violations of the Employee Retirement Income Security Act ("ERISA").

**Lukas v. Advocate Health Care, et al.**        **6/27/18 – Final Approval**
*No. 14-cv-01873 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP helped achieve final approval of a seven-figure class settlement on behalf of thousands of participants and beneficiaries to Advocate Health Care Network's Pension Plan based on alleged violations of the Employee Retirement Income Security Act ("ERISA").

**Brown v. Health Resource Solutions, Inc.**        **4/20/18 – Final Approval**
*No. 16-cv-10667 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of class settlement for $900,000.00 in unpaid overtime wages on behalf of Home Health Clinicians who were misclassified as exempt under federal and state wage laws.

**Eggleston v. USCC Services, LLC.**        **2/16/18 – Final Approval**
*No. 16-cv-06775 (United States District Court for the Northern District of Illinois)*
As co-lead counsel, Stephan Zouras, LLP helped obtain final approval of a $1,250,000 class settlement for unpaid overtime wages on behalf of misclassified Sales Managers.

**Caison v. Sogeti USA, LLC, et al.**        **2/12/18 – Final Approval**
*No. 17-cv-2786 (United States District Court for the Northern District of Illinois)*
As lead counsel, Stephan Zouras, LLP achieved a class wide settlement on behalf of hundreds of Business Analysts who worked in excess of 40 hours per week and were not paid proper overtime compensation.

**Kaminski v. Bank of America, N.A.**        **2/15/18 – Final Approval**
*No. 16-cv-10844 (United States District Court for the Northern District of Illinois)*
Final approval for class settlement in the amount of $850,000 in unpaid wages was granted and awarded to a class of approximately 100 employees working as Senior Specialist-Securities and Operation Market Professionals.

**Byrne v. Centegra Health System**        **1/29/18 – Final Approval**
*No. 17-cv-00018 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of class settlement for $425,000 in unpaid overtime wages on behalf of registered nurses, physical therapists, occupational therapists, speech therapists and other similarly-designated skilled care positions who were misclassified as exempt under federal and state wage laws.

**Donoghue v. Verizon Communications, Inc.**        **11/16/17 – Final Approval**
*No. 16-cv-4742 (United States District Court for the Eastern District of Pennsylvania)*
The Court granted final approval of class settlement for $800,000 in unpaid overtime wages on behalf of wireline workers who were hired to fill in for Verizon employees during a strike. Despite regularly working 65 hours per week, these

# STEPHANZOURAS, LLP

ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

employees were classified as exempt and denied overtime wages.

**Tompkins v. Farmers Insurance Exchange**                                    9/27/17 – Final Approval
*No. 14-cv-3737 (United States District Court for the Eastern District of Pennsylvania)*
The Court granted final approval of a $775,000.00 class settlement on behalf misclassified loan officers seeking unpaid overtime wages.

**In re Sears Holdings Corporation Stockholder and Derivative Litigation**          5/9/17 – Final Approval
*No. 11081-VCL (Court of Chancery of the State of Delaware)*
Stephan Zouras, LLP represented the Named Plaintiff in a $40 million settlement in connection with a 2015 sale by Sears of 235 properties to Seritage Growth Properties.

**Oaks v. Sears**                                                            4/12/17 – Final Approval
*No. 1:15-cv-11318 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP settled on behalf of thousands of consumers who own or once owned Sears Kenmore grills in a product defect class action.

**Hauser v. Alexian Brothers Home Health**                                   4/06/17 – Final Approval
*No. 15-cv-6462 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP settled for $1 million on behalf of home health care clinicians who were misclassified as "exempt" and deprived of earned overtime wages.

**Leiner v. Johnson & Johnson**                                              1/31/17 – Final Approval
*No. 15-cv-5876 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of a $5 million settlement for consumers nationwide in a consumer fraud class action. Stephan Zouras, LLP represented consumers who were deceived into paying premium prices for Johnson & Johnson baby bedtime products which falsely claimed to help babies sleep better.

**Reed v. Friendly's Ice Cream, LLC, et al.**                                1/31/17 – Final Approval
*No. 15-cv-00298 (United States District Court for the Middle District of Pennsylvania)*
Stephan Zouras, LLP served as co-counsel and helped obtain final approval of a $3,500,000 class settlement on behalf of nationwide Servers who were not compensated for off-the-clock worked performed during unpaid meal breaks and after their scheduled shifts.

**McPhearson v. 33 Management**                                              11/3/16 – Final Approval
*No. 15-ch-17302 (Circuit Court of Cook County, IL)*
The Court granted final approval of class settlement on behalf of tenants of a Chicago apartment building where the landlords violated the City of Chicago Residential Landlord and Tenant Ordinance by collecting and holding tenant security deposits without paying interest earned.

**Cook v. Bank of America**                                                  8/2/16 – Final Approval
*No. 15-cv-07718 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of $3,250,000 settlement for an Illinois Class and FLSA Collective on behalf of individuals who worked as Treasury Services Advisors and who were misclassified as exempt from earned overtime wages.

**Altnor v. Preferred Freezer Services, Inc.**                               7/18/16 – Final Approval
*No. 14-cv-7042 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as lead counsel in this lawsuit seeking recovery of wages for unpaid meal break work for a

FILED DATE: 3/21/2019 12:17 PM  2019CH03620

# STEPHANZOURAS, LLP

ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

FILED DATE: 3/21/2019 12:17 PM  2019CH03620

class of 80 cold storage warehouse workers.

**Lukas v. Advocate Health Care**                    6/29/16 – Final Approval
*No. 14-cv-2740 (United States District Court for the Northern District of Illinois)*
The Court granted final approval of a $4,750,000 settlement for a federal FLSA and Illinois Minimum Wage Law collective class of home health care clinicians who were wrongly classified as "exempt" from federal and state overtime laws.

**Kurgan v. Chiro One Wellness Centers LLC**                    4/27/16 – Final Approval
*No. 10-cv-1899 (United States District Court for the Northern District of Illinois)*
The Court granted Plaintiffs' motion for Section 216(b) certification of Plaintiffs' FLSA claim, granted Rule 23 certification of Plaintiffs' claims under the Illinois Minimum Wage Law and appointed Stephan Zouras, LLP as counsel for a class of chiropractic technicians and assistants.

**Heba v. Comcast**                    4/6/16 – Final Approval
*No. 12-471 (First Judicial District of Pennsylvania Court of Common Pleas of Philadelphia)*
The Court granted class certification to Customer Account Executives who worked at Comcast's Pennsylvania call centers and were required to work 15 minutes a day before their scheduled start time without pay. As lead counsel, Stephan Zouras, LLP achieved a favorable resolution for over 6,000 class members.

**Johnson v. Casey's General Stores, Inc.**                    3/3/16 – Final Approval
*No. 15-cv-3086 (United States District Court for the Western District of Missouri)*
The Court granted final approval on behalf of a certified class of employees of Casey's General Stores, Inc. to redress violations of the Fair Credit Reporting Act (FCRA).

**Fields v. Bancsource, Inc.**                    2/3/16 – Final Approval
*No. 14-cv-7202 (United States District Court for the Northern District of Illinois)*
The Court entered an order granted Plaintiffs' motion for Section 216(b) certification of a class of field engineers who were deprived of overtime for hours worked in excess of 40 in given workweeks.

**Elder, et al. v. Comcast Corporation**                    1/11/16 – Final Approval
*No. 12-cv-1157 (United States District Court for the Northern District of Illinois)*
The Court granted Plaintiffs' motion for conditional certification and appointed Stephan Zouras, LLP as counsel for a class of cable technicians who allege they were deprived of overtime wages in violation of federal law.

**Posada, et al. v. Continental Home Loans, Inc.**                    1/13/16 - Final Approval
*15-cv-4203 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP was appointed class counsel and achieved a substantial settlement on behalf of a class of loan officers deprived of minimum and overtime wages.

**Struett v. Susquehanna Bank**                    10/27/15 – Final Approval
*No. 15-cv-176 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as co-lead counsel in this lawsuit which recovered $300,000 in unpaid overtime wages for 31 misclassified loan officers.

**Faust, et al. v. Comcast Corporation**                    10/11/15 - Final Approval
*No. 12-cv-2336 (United States District Court for the Northern District of Maryland)*
The Court granted Plaintiffs' motion for conditional certification and appointed Stephan Zouras, LLP lead counsel for a class of call center employees.

# STEPHANZOURAS, LLP
ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

**Butler, et al. v. Direct Sat**                           **9/3/15 - Final Approval**
*No. 10-cv-08747 DKC (United States District Court for the District of Maryland)*
Stephan Zouras, LLP reached favorable resolution on behalf of a finally-certified collective class of technicians working in DirectSat's Maryland warehouses who were not paid overtime.

**Sosnicki v. Continental Home Loans, Inc.**               **7/30/15 - Final Approval**
*No. 12-cv-1130 (United States District Court for the Eastern District of New York)*
As lead class counsel, Stephan Zouras, LLP achieved a six-figure settlement on behalf of a collective class of loan officers who were deprived of minimum wages and overtime in violation of federal and state law.

**Bordell v. Geisinger Medical Center**                    **4/8/15 – Final Approval**
*No. 12-cv-1688 (Northumberland Court of Common Pleas)*
The firm's attorneys served as lead counsel in this lawsuit which challenged Defendant's workweek averaging practices and recovered $499,000 in unpaid overtime wages for hospital workers.

**Harvey, et al. v. AB Electrolux, et al.**                **3/23/15 – Final Approval**
*No. 11-cv-3036 (United States District Court for the Northern District of Iowa)*
As lead counsel, Stephan Zouras, LLP achieved a six-figure settlement amount on behalf of hundreds of production workers seeking unpaid earned wages.

**Price v. NCR Corporation**                               **3/18/15 – Final Approval**
*No. 51-610-908-12 (AAA Arbitration)*
As lead class counsel, Stephan Zouras, LLP achieved a seven figure, arbitrator approved settlement on behalf of thousands of Customer Engineers nationwide who were deprived overtime wages in violation of federal law.

**Frebes, et al. v. Mask Restaurants, LLC**                **1/15/15 – Final Approval**
*No. 13-cv-3473 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP was appointed class counsel and achieved a substantial settlement on behalf of hundreds of servers, bartenders and bussers forced to participate in an illegal "tip pool."

**Jones v. Judge Technical Services Inc.**                 **12/15/14 – Final Approval**
*No. 11-cv-6910 (United States District Court for the Eastern District of Pennsylvania)*
As lead class counsel, Stephan Zouras, LLP prevailed on summary judgment and subsequently achieved a seven-figure settlement on behalf of IT workers who were designated under the "Professional Day" or "Professional Week" compensation plan, misclassified as exempt from the FLSA and denied overtime pay.

**Howard, et al. v. Securitas Security Services USA, Inc.**    **5/7/14 – Final Approval**
*No. 08-cv-2746 (United States District Court for the Northern District of Illinois)*
**and, Hawkins v. Securitas Security Services USA, Inc.**
*No. 09-cv-3633 (United States District Court for the Northern District of Illinois)*
For settlement purposes, the Court certified a class of approximately ten thousand security guards seeking damages for unpaid wages and overtime under the FLSA and Illinois Minimum Wage Law.

**Thomas v. Matrix Corporation Services**                  **2/12/14 – Final Approval**
*No. 10-cv-5093 (United States District Court for the Northern District of Illinois)*
As lead counsel, Stephan Zouras, LLP achieved a six-figure settlement on behalf of a class of hundreds of technicians who allege they were deprived of overtime wages in violation of federal law.

FILED DATE: 3/21/2019 12:17 PM   2019CH03620

# STEPHANZOURAS, LLP
## ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

**Ingram v. World Security Bureau**                                      **12/17/13 – Final Approval**
*No. 11-cv-6566 (United States District Court for the Northern District of Illinois)*
Stephan Zouras secured a class settlement on behalf of several hundred security officers deprived of minimum wages and overtime in violation of federal and state law.

**Sexton v. Franklin First Financial**                                   **9/30/13 – Final Approval**
*No. 08-cv-04950 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP achieved a settlement on behalf of a class of approximately 150 loan officers deprived of minimum wages and overtime in violation of the FLSA.

**Outlaw v. Secure Health, L.P.**                                        **9/24/13 – Final Approval**
*No. 11-cv-602 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as lead counsel in this lawsuit seeking recovery of wages for unpaid pre-shift, meal break and uniform maintenance work for a class of 35 nursing home workers.

**Robinson v. RCN Telecom Services, Inc.**                               **8/5/13 – Final Approval**
*No. 10-cv-6841 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as co-lead counsel in this lawsuit which recovered $375,000 in unpaid overtime wages for misclassified cable television installers.

**Holland v. Securitas Security Services USA, Inc.**                     **7/26/13- Final Approval**
*No. BC 394708 (Superior Court of California, County of Los Angeles)*
As class counsel, Stephan Zouras, LLP achieved a six figure settlement on behalf of thousands of security officers who allege they were deprived of overtime wages in violation of federal law.

**Jankuski v. Heath Consultants, Inc.**                                  **7/2/13 - Final Approval**
*No. 12-cv-04549 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP was appointed lead counsel and achieved a settlement on behalf of gas management technicians deprived of minimum wages and overtime in violation of the FLSA.

**Ord v. First National Bank of Pennsylvania**                           **6/21/13 – Final Approval**
*No. 12-cv-766 (United States District Court for the Western District of Pennsylvania)*
The firm's attorneys served as co-lead counsel in this consumer fraud lawsuit which recovered $3,000,000 for consumers who had been made to pay improper overdraft fees.

**Holley v. Erickson Living Management, LLC**                            **6/13/13 – Final Approval**
*No. 11-cv-2444 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as lead counsel in this lawsuit seeking recovery of wages for unpaid pre-shift and meal break work for a class of 63 nursing home workers.

**Hansen, et al. v. Per Mar Security Services**                          **5/15/13 - Final Approval**
*No. 09-cv-459 (United States District Court for the Southern District of Iowa)*
Stephan Zouras, LLP was appointed class counsel and secured a settlement for hundreds of security guards deprived of minimum wages and overtime in violation of federal and state law.

# STEPHANZOURAS, LLP
ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

**Pomphrett v. American Home Bank**                                    **3/14/13 – Final Approval**
*No. 12-cv-2511 (United States District Court for the Eastern District of Pennsylvania)*
The firm's attorneys served as co-lead counsel in this lawsuit which recovered $2,400,000 in unpaid overtime wages for misclassified loan officers.

**Murphy v. Rayan Brothers, et al.**                                    **2/22/13 - Final Approval**
*No. 11 CH 03949 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
Stephan Zouras, LLP achieved class wide recovery on behalf of a class of tenants for violations of the Chicago Residential Landlord and Tenant Ordinance (RLTO).

**Glatts v. Crozer-Keystone Health System**                            **2/6/13 – Final Approval**
*No. 0904-1314 (Philadelphia Court of Common Pleas)*
The firm's attorneys served as co-lead counsel in this lawsuit which challenged Defendant's workweek averaging practices and recovered $1,200,000 in unpaid overtime wages for hospital workers.

**Chambers v. Front Range Environmental, LLC**                         **1/23/13 - Final Approval**
*No. 12-cv-891 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP was appointed as class counsel and resolved this action on behalf of a class of maintenance workers.

**Piehl v. Baytree National Bank**                                      **1/3/13 - Final Approval**
*No. 12-cv-1364 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP was appointed class counsel and resolved this action on behalf of a class of Indiana loan officers who were paid on a commission-only basis and deprived of earned minimum wage and overtime in violation of the FLSA.

**Searson v. Concord Mortgage Corporation**                            **11/19/12 - Final Approval**
*No. 07-cv-3909 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP achieved a settlement on behalf of a class of 80 loan officers deprived of minimum wages and overtime in violation of the FLSA.

**Ellenbecker, et al. v. North Star Cable Construction, Inc., et al.**   **11/14/12 - Final Approval**
*No. 09-cv-7293 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP obtained Rule 23 certification, were appointed lead counsel, and achieved a significant monetary resolution for a class of several hundred cable technicians seeking unpaid overtime wages and the recovery of improper deductions from their pay.

**Williams, et al. v. Securitas Security Services USA, Inc.**           **11/8/12 - Final Approval**
*No. 10-cv-7181 (United States District Court for the Eastern District of Pennsylvania)*
As lead class counsel, Stephan Zouras, LLP achieved a settlement on behalf of a class of Pennsylvania security guards who were not paid for all time spent in training and orientation.

**Lacy, et al. v. The University of Chicago Medical Center**            **11/6/12 – Final Approval**
*No. 11-cv-5268 (United States District Court for the Northern District of Illinois)*
As lead class counsel, Stephan Zouras, LLP achieved a FLSA settlement for a collective class of hospital respiratory therapists.

# STEPHANZOURAS, LLP
## ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

**Molyneux, et al. v. Securitas Security Services USA, Inc.**          **11/5/12 - Final Approval**
*No. 10-cv-588 (United States District Court for the Southern District of Iowa)*
As lead class counsel, Stephan Zouras achieved a settlement on behalf of a class of Iowa and Wisconsin security guards who were not paid for all time spent in training and orientation.

**Davis v. TPI Iowa, LLC**          **9/6/12 - Final Approval**
*No. 11-cv-233 (United States District Court for the Southern District of Iowa)*
As class counsel, Stephan Zouras, LLP achieved a settlement on behalf of a collective class of production employees.

**Kernats, et al. v. Comcast Corporation**          **5/28/12 - Final Approval**
*No. 09-cv-3368 (United States District Court for the Northern District of Illinois)*
As lead class counsel, Stephan Zouras, LLP achieved a seven-figure settlement on behalf of over 7,500 Customer Account Representatives (CAEs) for unpaid wages in a Rule 23 class action brought under Illinois wage law.

**Garcia, et al. v. Loffredo Fresh Produce Co., Inc.**          **5/24/12 - Final Approval**
*No. 11-cv-249 (United States District Court for the Southern District of Iowa)*
As class counsel, Stephan Zouras, LLP achieved a settlement on behalf of a collective class of produce processing employees.

**Larsen, et al. v. Clearchoice Mobility, Inc., et al.**          **3/21/12 - Final Approval**
*No. 11-cv-1701 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved an FLSA settlement on behalf of a collective class of retail sales consultants.

**Etter v. Trinity Structural Towers**          **1/26/12 - Final Approval**
*No. 11-cv-249 (United States District Court for the Southern District of Iowa)*
As class counsel, Stephan Zouras, LLP achieved a settlement on behalf of a collective class of production employees.

**Petersen, et al v. Marsh USA, Inc. et al.**          **9/21/11 - Final Approval**
*No. 10-cv-1506 (United States District Court for the Northern District of Illinois)*
Stephan Zouras, LLP achieved a six-figure settlement on behalf of over 30 analysts who claimed they were misclassified under the FLSA.

**Thompson v. World Alliance Financial Corp.**          **8/5/11 - Final Approval**
*No. 08-cv-4951 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP were appointed lead counsel and achieved a settlement on behalf of a class of over one hundred loan officers deprived of minimum wages and overtime in violation of federal and state law.

**Vaughan v. Mortgage Source LLC, et al.**          **6/16/11 - Final Approval**
*No. 08-cv-4737 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP were appointed lead counsel and achieved a settlement on behalf of a class of loan officers deprived of minimum wages and overtime in violation of federal and state law.

**Harris, et al. v. Cheddar's Casual Cafe, Inc.**          **6/1/11 - Final Approval**
*No. 51 460 00557 10 (AAA Arbitration)*
Stephan Zouras served as lead counsel in six-figure class settlement on behalf of over 100 restaurant workers deprived of minimum wages and overtime.

FILED DATE: 3/21/2019 12:17 PM 2019CH03620

# STEPHANZOURAS, LLP

ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

**Turner v. Mercy Health System**                                      **4/20/11 – Final Approval**
*No. 0801-3670 (Philadelphia Court of Common Pleas)*
The firm's attorneys served as co-lead counsel in this lawsuit which challenged Defendant's workweek averaging practices and, in a case of first impression, recovered $2,750,000 in unpaid overtime wages for hospital workers.

**Brown et al. v. Vision Works, et al.**                               **3/4/11 - Final Approval**
*No. 10-cv-01130 (United States District Court for the Northern District of Illinois)*
As lead class counsel, Stephan Zouras, LLP achieved a settlement on behalf of retail store managers improperly classified as exempt from overtime.

**Havard v. Osceola Foods, Inc., et al.**                              **2/28/11 - Final Approval**
*No. LA CV 0111290 (Iowa District Court for Clarke County, Iowa)*
As lead class counsel, Stephan Zouras, LLP achieved a class settlement on behalf of meat processing plant employees who were not properly paid for donning and doffing activities performed before their shifts, during meal breaks and after their shifts.

**Lagunas v. Cargill Meat Solutions Corp.**                            **1/27/11 - Final Approval**
*No. 10-cv-00220 (United States District Court for the Southern District of Iowa)*
Stephan Zouras, LLP served as co-lead counsel in class settlement on behalf of meat processing plant employees who were not properly paid for donning and doffing activities performed before their shifts, during meal breaks and after their shifts.

**Anderson v. JCG Industries, Inc.**                                   **9/2/10 - Final Approval**
*No. 09-cv-1733 (United States District Court for the Northern District of Illinois)*
As lead class counsel, Stephan Zouras, LLP achieved a six-figure settlement on behalf of meat processing plant employees who were not properly paid for time worked before their shifts, during meal breaks and after their shifts.

**Cedeno, et al. v. Home Mortgage Desk, Corp., et al.**                **6/15/10 - Final Approval**
*No. 08-cv-1168 (United States District Court for the Eastern District of New York)*
Stephan Zouras, LLP along with co-counsel was appointed lead counsel and achieved a six-figure settlement on behalf of a Section 216(b) collective class of loan officers deprived of overtime wages.

**Perkins, et al. v. Specialty Construction Brands, Inc.**             **11/15/09 - Final Approval**
*No. 09-cv-1678 (United States District Court for the Northern District of Illinois)*
As lead class counsel, Stephan Zouras, LLP achieved a six-figure wage and hour settlement on behalf of a collective class of plant employees for claims of unpaid overtime, including time worked before the start of their shifts, during breaks and after the end of their shifts.

**Wineland, et al. v. Casey's General Stores, Inc.**                   **10/22/09 - Final Approval**
*No. 08-cv-00020 (United States District Court for the Southern District of Iowa)*
Stephan Zouras, LLP along with co-counsel was appointed lead counsel and achieved a seven-figure settlement on behalf of a Section 216(b) collective class and Rule 23 class of over 10,000 cooks and cashiers for unpaid wages, including time worked before and after their scheduled shifts and while off-the-clock.

**Jones, et al. v. Casey's General Stores, Inc.**                      **10/22/09 - Final Approval**
*No. 07-cv-400 (United States District Court for the Southern District of Iowa)*

# STEPHANZOURAS, LLP
## ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

Stephan Zouras, LLP along with co-counsel was appointed lead counsel and achieved a seven-figure settlement on behalf of a Section 2 I 6(b) collective class and Rule 23 class of assistant store managers for unpaid wages, including time worked before and after their scheduled shifts and while off-the-clock.

### Stuart, et al. v. College Park, et al.                                                 12/11/07 - Final Approval
*No. 05 CH 09699 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
The firm's partners served as co-lead counsel in this case brought on behalf of a class of tenants who were seeking the refund of their security deposits. As a result of their efforts, Mr. Stephan and Mr. Zouras helped achieve a six-figure settlement on behalf of a class of over 100 tenants.

### Huebner et al. v. Graham C Stores                                            11/15/07 - Final Approval
*No. 06 CH 09695 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
Ryan Stephan of Stephan Zouras, LLP served as co-lead counsel in this wage and hour case involving claims for unpaid wages by a class of gas station employees. Mr. Stephan helped achieve a six-figure settlement for over 100 employees.

### Perez, et al. v. RadioShack Corporation                                     9/14/07 - Final Approval
*No. 02-cv-7884 (United States District Court for Northern District of Illinois)*
The firm's partners served as co-lead counsel in this nationwide Fair Labor Standards Act ("FLSA") overtime action brought on behalf of 4,000 retail store managers. Plaintiffs claimed they were improperly classified as exempt from the FLSA and owed overtime compensation for all hours worked in excess of 40 each week. In a case of first impression, the Court granted summary judgment in favor of a sub-class of Plaintiffs who did not "regularly and customarily" supervise at least 80 hours of subordinate time per week at least 80% of the time as required by the executive exemption of the FLSA. The reported decision is *Perez v. RadioShack Corp.*, 386 F. Supp. 979 (N.D. Ill. 2005). As a result of the efforts of Plaintiffs' counsel, Plaintiffs obtained a nearly $9 million settlement on the eve of trial.

### Reinsmith, et al. v. Castlepoint Mortgage                                   4/3/07 - Final Approval
*No. 05-cv-01168 (United States District Court, Eastern District of Massachusetts)*
The firm's partners served as co-lead counsel in this action brought on behalf of a collective class of loan officers seeking to recover unpaid overtime. Mr. Stephan and Mr. Zouras helped achieve a seven-figure settlement on behalf of over 100 loan officers in this case.

### Kutcher, et al. v. B&A Associates                                            11/20/06 - Final Approval
*No. 03 CH 07610 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
The firm's partners served as co-lead counsel in this case brought on behalf of a class of tenants who were seeking damages based on alleged security deposit violations. As a result of their efforts, Mr. Stephan and Mr. Zouras helped achieve a six-figure settlement on behalf of a class of over 100 tenants.

### Ciesla, et al. v. Lucent Technologies, Inc.                                 7/31/06 - Final Approval
*No. 05-cv-1641 (United States District Court for the Northern District of Illinois)*
The firm's partners served as co-lead counsel in this breach of contract class action against a high-tech communications company. Mr. Stephan and Mr. Zouras helped obtain a seven-figure settlement on behalf of the class.

### Casale, et al. v. Provident Bank                                            7/25/05 - Final Approval
*No. 04-cv-2009 (United States District Court for the District of New Jersey)*
The firm's partners served as co-lead counsel in this case brought on behalf of a collective class of over 100 loan officers

# STEPHANZOURAS, LLP

ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

who were seeking damages based on wage and hour violations of the FLSA. As a result of their efforts, Mr. Stephan and Mr. Zouras helped achieve a seven-figure settlement on behalf of the Plaintiffs.

**Corbin, et al. v. Barry Realty**                                                         **3/22/05 - Final Approval**
*No. 02 CH 16003 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
The firm's partners served as co-lead counsel in this case brought on behalf of a class of tenants who were seeking the refund and interest on their security deposits as called for by the Chicago Residential Landlord Tenant Ordinance. As a result of their efforts, Mr. Stephan and Mr. Zouras helped achieve a six-figure settlement on behalf of a class of over 100 tenants.

## BIOMETRIC INFORMATION PRIVACY CLASS ACTION LAWSUITS

**Our firm is at the forefront of BIPA litigation to protect the biometric data and privacy of employees and consumers. We have brought numerous class action lawsuits against employers and other retail businesses who have collected biometric data without consent and without instituting the proper safeguards including;**

- **Battles, et al v. Southwest Airlines Co., et al.**
  *No. 2018-CH-09376 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Bello, et al. v. The Parc at Joliet, LLC**
  *No. 2018-CH-1888 (Circuit Court of Will County, State of Illinois)*
- **Brown, et al. v. Weathertech**
  *No. 2019-CH-00503 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Bryant, et al. v. Loews Chicago Hotel, Inc., et al.**
  *No. 2018-CH-09477 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Bryski, et al. v. Nemera Buffalo Grove, LLC, et al.**
  *No. 2018-CH-07264 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Cacy, et al. v. Agco Corporation, et al.**
  *No. 2018-CH-09968 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Cameron, et al. v. Polar Tech Industries, Inc., et al.**
  *No. 2018-CH-10001 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Chatman, et al. v. Crate and Barrel**
  *No. 2018-CH-09277 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Cothron v. White Castle, et al.**
  *No. 2018-CH-15233 (Circuit Court of Cook County, Chancery Division)*
- **Crooms, et al. v. Southwest Airlines**
  *No. 2019-CH-01610 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Diaz, et al. v. Silver Cross Hospital**
  *No. 2018-CH-1327 (Circuit Court of Will County, State of Illinois)*
- **Doporcyk, et al. v. Mariano's**
  *No. 17-cv-05250 (United States District Court for the Northern District of Illinois)*
- **Dixon, et al. v. Smith Senior Living**
  *No. 17-cv-08033 (United States District Court for the Northern District of Illinois)*
- **Edmond, et al. v. DPI Specialty Foods, Inc., et al.**
  *No. 2018-CH-09573 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Fields, et al. v. Abra Auto Body & Glass**

# STEPHANZOURAS, LLP
ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

FILED DATE: 3/21/2019 12:17 PM  2019CH03620

*No. 17-CH-12271 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Figueroa, et al. v. Tony's Fresh Market, et al.**
  *No. 2018-CH-15728 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **George, et al. v. Marriot International, Inc., et al.**
  *No. 2018-CH-04413 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Goings, et al. v. Applied Acoustics**
  *No. 17-CH-14954 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Heard, et al. v. St. Bernard Hospital, et al.**
  *No. 2017-CH-16828 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Heard, et al v. THC-North Shore, Inc.**
  *No. 2017-CH-16918 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Henderson, et al. v. ADP, LLC, et al.**
  *No. 2018-CH-07139 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Jackson, et al. v. A. Finkl & Sons, Co., et al.**
  *No. 2018-CH-07424 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Johns, et al. v. Club Fitness of Alton, LLC**
  *No. 2018-L-000080 (Circuit Court of Madison County, Law Division, State of Illinois)*
- **Johnson, et al. v. Gold Standard Baking, Inc., et al.**
  *No. 2018-CH-09011 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Jones, et al. v. Hooters Management Corporation, et al.**
  *No. 2018-Ch-00908 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Kane, et al. v. Con-Tech Lighting, et al.**
  *No. 2018-CH-12194 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Kardos, et al. v. ABT Electronics, Inc.**
  *No. 2019-CH-01235 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Krause, et al. v. Caputo's New Farm Produce, et al.**
  *No. 2018-Ch-11660 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Liu, et al. v. Four Seasons**
  *No. 17-CH-14949 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Mazya, et al. v. Northwestern Lake Forest Hospital, et al.**
  *No. 2018-CH-07161 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Mims, et al. v. Hilton**
  *No. 17-CH-15781 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Morris, et al. v. Imperial Towers Condominium Assn.**
  *No. 2018-CH-00989 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Morris, et al. v. Wow Bao**
  *No. 17-CH-12029 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Mosby, et al. v. The Ingalls Memorial Hospital, et al.**
  *No. 2018-CH-05031 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Ogen, et al. v. Wyndham Hotels & Resorts**
  *No. 17-CH-15626 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Peaks-Smith, et al. v. Saint Anthony Hospital, et al.**
  *No. 2018-CH-07077 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Ramsey, et al. v. Daley's Medical Transportation, Inc.**
  *No. 2018-CH-01935 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Robertson, et al. v. Hostmark Hospitality Group, Inc., et al.**

# STEPHAN**ZOURAS**, LLP
ATTORNEYS AT LAW

100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
P 312-233-1550 | F 312-233-1560
stephanzouras.com

*No. 2018-CH-05194 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Sanchez, et al v. Elite Labor Services**
  *No. 2018-CH-02651 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Stidwell, et al. v. NFI, LLC, et al.**
  *No. 2018-CH-13599 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Tellado, et al. v. Rich Products Corporation, et al.**
  *No. 2018-CH-07627 (Circuit Court of Cook County, Chancery Division, State of Illinois)*
- **Thome, et al. v. Flexicorps, Inc.**
  *No. 2018-CH-01751 (Circuit Court of Cook County, Chancery Division)*
- **Thurman, et al. v. Northshore University HealthSystem**
  *No. 2018-CH-03544 (Circuit Court of Cook County, Chancery Division)*
- **Treadwell, et al. v. Power Solutions International, Inc., et al.**
  *No. 2018-CH-13574 (Circuit Court of Cook County, Chancery Division)*
- **Watts, et al. v. Chicago Lakeshore Hospital**
  *No. 17-cv-07713 (United States District Court for the Northern District of Illinois)*
- **White v. East Side Child Development Center, et al.**
  *No. 2018-CH-09599 (Circuit Court of Cook County, Chancery Division)*

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED DATE: 4/5/2019 11:45 AM 2019CH03620

Scott Wrigglesworth
Sheriff

Andrew Bouck
Undersheriff

# INGHAM COUNTY SHERIFF'S OFFICE – CIVIL DIVISION

George Lammers
Deputy Sheriff

FILED
4/5/2019 11:45 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH03620

**AFFIDAVIT OF SERVICE**
**STATE OF MICHIGAN**

P.O. BOX 456 · HOLT, MICHIGAN 48842 · TELEPHONE 517-699-5500 · FAX 517-699-0036

I, the undersigned Deputy Sheriff for the said County, being first duly sworn on oath do hereby state that I received the following:

- **SUMMONS**

on the ___29th___ day of ___March___, 2019, and I certify that I:

served the same on the Defendants: ___Dakkota Integrated Systems LLC___

by means of: ___Personal Service___

at ___1875 Holloway Dr, Holt, MI 48842___ in Ingham County,

State of Michigan

at ___1:45 P___.m. on ___Fri___ the ___29___ day of ___March___, 2019.

After diligent search and inquiry, I have been unable to find and serve the following defendant(s): _____

I have made the following efforts in attempts to serve process: _____
_____
_____

I have personally attempted to serve the process together with _____
_____ on _____
_____ at _____ and have been
unable to complete service because **the address was incorrect at the time of filing.**

District 1 Court, Cook County, State of Illinois
Case No. 2019CH03620
Raven Fox vs. Dakkota Integrated Systems, LLC

_George A. Lammers_                                    ___3-29-19___
George Lammers – Deputy Sheriff                         Date Signed
Ingham County Sheriff's Office – Civil Division

SUBSCRIBED AND SWORN TO BEFORE ME, A NOTARY PUBLIC FOR SAID COUNTY AND STATE,
ON THIS ___29th___ DAY, OF ___March___, 2019.

_____
NOTARY PUBLIC

**ANDREW WITT**
**NOTARY PUBLIC - STATE OF MICHIGAN**
**COUNTY OF INGHAM**
My Commission Expires February 27, 2021

(Notary Seal)

I acknowledge that I have received service of the _____ together with

_____ on ___3-29-19, Fri    1:45 Pm___
                                           Day, date, time

x _Amy Quintero_                    on behalf of ___Dakkota Integrated System LLC___
Signature

x Print ___Amy Quintero___                    x title. ___Human Resources___

Attachments

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on April 5, 2019, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

*/s/ Ryan F. Stephan*

(12/30/15) CCL N530

FILED
4/5/2019 5:34 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH03620

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED DATE: 4/5/2019 5:34 PM   2019CH03620

RAVEN FOX, individually, and on behalf of all others similarly situated,

                                   Plaintiff

        v.

DAKKOTA INTEGRATED SYSTEMS, LLC

                               Defendant

No.  2019CH03620

Calendar:  10

## APPEARANCE

☑ GENERAL APPEARANCE       0900 - APPEARANCE - FEE PAID;  0909 - APPEARANCE - NO FEE;
                                0904 - APPEARANCE FILED - FEE WAIVED

☐ JURY DEMAND              1900 - APPEARANCE & JURY DEMAND - FEE PAID
                                1909 - APPEARANCE & JURY DEMAND - NO FEE

The undersigned enters the appearance of:    ☐ Plaintiff  ☑ Defendant

Dakkota Integrated Systems, LLC

_____
(Insert litigant's name.)

_____
                                           Signature

☑ INITIAL COUNSEL OF RECORD    ☐ PRO SE
☐ ADDITIONAL APPEARANCE       ☐ SUBSTITUTE APPEARANCE

    A copy of this appearance shall be given to all parties who have appeared and have not been found by the Court to be in default.

☑ Atty. No.:  58950        ☐ Pro Se  99500

(Please complete the following contact information.)

Name:  Shook, Hardy & Bacon L.L.P.

Atty. for:  Dakkota Integrated Systems, LLC

Address:  111 S. Wacker Dr.

City/State/Zip:  Chicago, IL  60606

Telephone:  (312) 704-7700

Primary Email:  msiebert@shb.com

Secondary Email:  mneubeck@shb.com

Tertiary Email: _____

**Pro Se Only:** ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

_____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED DATE: 4/5/2019 11:45 AM  2019CH03620

**Scott Wrigglesworth**
Sheriff

**Andrew Bouck**
Undersheriff

# INGHAM COUNTY SHERIFF'S OFFICE – CIVIL DIVISION

**George Lammers**
Deputy Sheriff

FILED
4/5/2019 11:45 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH03620

**AFFIDAVIT OF SERVICE**
**STATE OF MICHIGAN**

P.O. BOX 456 · HOLT, MICHIGAN 48842 · TELEPHONE 517-699-5500 · FAX 517-699-0036

I, the undersigned Deputy Sheriff for the said County, being first duly sworn on oath do hereby state that I received the following:

- **SUMMONS**

on the ___29th___ day of _____March_____, 2019, and I certify that I:

served the same on the Defendants: __Dakkota Integrated Systems LLC__

by means of: _Personal Service_

at ___1875 Holloway Dr, Holt, MI 48842___ in Ingham County,
State of Michigan
at _1:45 P_.m. on _Fri_ the _29_ day of _March_, 2019.

After diligent search and inquiry, I have been unable to find and serve the following defendant(s): _____

I have made the following efforts in attempts to serve process: _____
_____
_____
_____

I have personally attempted to serve the process together with _____
_____ on _____
at _____ and have been
unable to complete service because **the address was incorrect at the time of filing.**

District 1 Court, Cook County, State of Illinois
Case No. 2019CH03620
Raven Fox vs. Dakkota Integrated Systems, LLC

_George A Lammers_                    3-29-19
George Lammers – Deputy Sheriff                    Date Signed
Ingham County Sheriff's Office – Civil Division

SUBSCRIBED AND SWORN TO BEFORE ME, A NOTARY PUBLIC FOR SAID COUNTY AND STATE,
ON THIS _29th_ DAY OF _March_, 2019.

_____
NOTARY PUBLIC

**ANDREW WITT**
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF INGHAM
My Commission Expires February 27, 2021

(Notary Seal)

I acknowledge that I have received service of the _____ together with
_____ on 3-29-19, Fri  1:45 Pm
Attachments                    Day, date, time
x _Amy Quintero_                    on behalf of _Dakkota Integrated System LLC_
Signature

x Print _Amy Quintero_                    x title _Human Resources_

## <u>CERTIFICATE OF SERVICE</u>

I, the attorney, hereby certify that on April 5, 2019, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

*/s/ Ryan F. Stephan*