**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RAVEN FOX, individually, and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 1:19-cv-02872<br>)<br>) Hon. Charles P. Kocoras |
| DAKKOTA INTEGRATED SYSTEMS, LLC, | )<br>)<br>) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT DAKKOTA INTEGRATED SYSTEMS, LLC'S MOTION TO DISMISS</u>**

**I.      Introduction**

This is a labor dispute between Dakkota Integrated Systems, LLC (Dakkota), an employer subject to the Labor Management Relations Act (LMRA), and its union-represented employee concerning Dakkota implementing a timekeeping system—an ordinary topic of collective bargaining. This dispute requires interpretation of the parties' collective bargaining agreement (CBA), and therefore must go to arbitration. We know this because the Seventh Circuit said so. In a highly similar case involving an alleged biometric timekeeping system, the Court held that "[i]t is not possible even in principle to litigate a dispute about how an [employer] acquires and uses fingerprint information for its whole workforce without asking whether the union has consented on the employees' behalf. That's why this dispute must go to an [arbitrator]." *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 904 (7th Cir. 2019). This case is no different, and Dakkota therefore requests an order dismissing Plaintiff's claims.

**II.     Background**

    **A.     The Complaint**

Plaintiff Raven Fox brought this lawsuit against her former employer Dakkota. Plaintiff alleges that Dakkota is liable for violating BIPA because, as a condition of employment, it required Plaintiff to use a timekeeping system that scanned her hand to clock-in and clock-out of work without giving her written notice and receiving her consent to collect her handprint.[1] (Compl., ¶¶ 41, 43-46.) Plaintiff purports to bring this lawsuit on behalf of a class of similarly situated individuals, which the Complaint defines as "all individuals working for Dakkota Integrated Systems in the State of Illinois who had their hand geometry collected, captured,

---

[1] Dakkota disputes that its timekeeping system actually collects, captures, retains, purchases, receives, or otherwise obtains handprints. Dakkota merely recites Plaintiff's allegations.

received, obtained, maintained, stored or disclosed by Defendant during the applicable statutory period." (Compl., ¶ 58.)

B. **Plaintiff's Union Membership and the Applicable CBAs**

Plaintiff was employed as a "Team Lead" at Dakkota's Chicago location from February 2012 until January 2019. *See* Ex. A (Dkt. 14-1, ¶ 6 (Zekas Decl.).) As a Team Lead at Dakkota's Chicago location, Plaintiff was represented for purposes of collective bargaining by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America U.A.W. and Local 3212 ("the Union"). (*Id.*, ¶ 6.)

Dakkota and the Union have been parties to CBAs ratified by the Union's members for many years. (*Id.*, ¶ 7.) The parties' most recent CBA governed the terms and conditions of Plaintiff's employment and was effective from January 18, 2016 through January 17, 2020. (*Id.*) Prior to that CBA, Dakkota and the Union were parties to a CBA effective from July 1, 2010 through June 20, 2015. (*Id.*)

The CBAs provide that the Union was Plaintiff's "exclusive bargaining representative" for "all matters including <u>without limitation</u>, wages, hours and all other economic matters and other conditions of employment which were raised or could have been raised by the Company or the Union at the time of negotiations." (*Id.*, ¶ 8.) The CBAs contain a broad management-rights provision. (*Id.*, ¶ 9.) They also contain a five-step grievance procedure for resolution of disputes, which culminates in arbitration with the Federal Mediation and Conciliation Service. (*Id.*, ¶ 8.)

C. **Illinois Biometric Information Privacy Act (BIPA)**

BIPA took effect in October 2008. 740 ILCS 14/5. BIPA creates a right of action for any person "aggrieved" by a violation of BIPA. The statute sets forth various requirements for the retention, collection, disclosure, and destruction of "biometric identifiers," a term that it defines to include, *inter alia*, a "scan of hand geometry." *Id.* at 14/10 (definition of biometric identifiers);

2

*id.* at 14/15 (the various requirements). BIPA requires the entity to "inform[] the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored" and to "receive[] a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." *Id.* at 14/15 (emphasis added). The statute contemplates its application in the employment context and provides that, rather than informed written consent, an employer may obtain a release as a condition of employment. *See* 740 ILCS 14/10 ("'Written release' means informed written consent or, in the context of employment, a release executed by an employee as a condition of employment.").

### III. Legal Standard

A dismissal based on labor law preemption should be labeled as a judgment on the pleadings under Fed. R. Civ. P. 12(c), or a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Miller*, 926 F.3d at 901 (declining to determine which label was more appropriate because "either a substantive or jurisdictional label ends the litigation between these parties and forecloses its continuation in any other judicial forum"). The LMRA preempts a state law cause of action if resolution of that claim requires interpretation of a collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407, 413 (1988). Where an employer advances a "non-frivolous argument" that the complained-of conduct was authorized by a management-rights clause, the claim cannot be resolved without interpretation of the agreement and is thus preempted. *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1179 (7th Cir. 1993) (holding that the LMRA preempted plaintiffs-employees' state law privacy claim because employers had a "non-frivolous argument that the surveillance of which the plaintiffs complain[ed] is authorized, albeit implicitly by the management-rights clause of the

3

agreement"); *cf. Bhd. of Locomotive Eng'r and Trainmen v. Union Pacific R.R. Co.*, 879 F.3d 754, 756, 758 (7th Cir. 2017) (explaining that the standard for preemption under the analogous RLA is "quite low" and the employer only needs to make a "non-frivolous" argument that interpretation of the collective bargaining agreement is at stake").

IV. **Argument**

    A. **Plaintiff's BIPA claims are preempted by the LMRA.**

Plaintiff's BIPA claims are preempted by federal labor law and must go to arbitration. In *Lingle*, 486 U.S. at 406, the Supreme Court held that claims requiring interpretation of a CBA are preempted by the LMRA. We know that Plaintiff's BIPA claims require interpretation of the CBA because the Seventh Circuit told us so in its recent *Miller* decision.

In *Miller*, current and former employees of Southwest Airlines filed a lawsuit in Illinois state court asserting that Southwest Airlines violated BIPA by implementing a finger scan time clock and requiring them to scan their fingers without giving them written notice and obtaining their consent. Southwest Airlines removed the case to the Northern District and sought dismissal of the lawsuit to arbitration on grounds that the dispute would require interpretation of the CBA that governed the terms and conditions of plaintiffs' employment. *Miller v. Southwest Airlines*, 18-cv-86 (N.D. Ill.), Dkt. 1, 28. The district court dismissed the claims, and the plaintiffs appealed. *Miller*, 18-cv-86, Dkt. 44 (initial opinion), 51 (opinion denying Rule 59 motion). On appeal, Southwest Airlines advanced two arguments why the dispute required interpretation of the CBA: (1) there was a question whether the union consented to the collection of fingerprints on behalf of its members when it agreed to the CBA's broad management-rights clause; and (2) there was a question whether the union consented to the collection of fingerprints on behalf of its members when it was informed that they would be collected and did not object.

4

The Seventh Circuit held that either question was sufficient to find labor law preemption and thus dismissed the BIPA claims to arbitration. *See Miller*, 926 F.3d at 903 ("Whether [the] unions *did* consent to the collection and use of biometric data, or perhaps grant authority through a management-rights clause, is a question for an [arbitrator]."). Likewise, it held that the other parts of the BIPA claims (e.g., retention schedules) also belong in arbitration. *Id.* ("Similarly, the retention and destruction schedules for biometric data, and whether [employers] may use third parties to implement timekeeping and identification systems, are topics for bargaining between unions and management."). Moreover, it rejected the argument that BIPA's focus on privacy rights takes it outside the scope of labor law preemption. *Id.* at 904 ("That biometric information concerns workers' privacy does not distinguish it from many other subjects, such as drug testing, that are routinely covered by collective bargaining and on which unions give consent on behalf of the whole bargaining unit."). At bottom, the Seventh Circuit held that it is not possible even in principle to address these claims without considering what the union knew and consented to, which are questions for an arbitrator, not the court. *Id.* at 904.[2]

This case is indistinguishable. Like *Miller*, Plaintiff belonged to a union that entered into successive CBAs with her employer. Those CBAs also made the Union the employee's sole agent for the purposes of collective bargaining, granted the employer broad management rights, and set forth a grievance procedure that required disputes regarding the CBA to be handled in arbitration. Thus, like *Miller*, it is not possible even in principle to "litigate a dispute about how

---

[2] The Seventh Circuit also made clear that dismissal was appropriate at the pleadings stage and that further discovery would be improper. *Id.* ("What Southwest told the union, whether it furnished that information in writing, when these things happened, and what the union said or did in response, are matters not in this record. They are properly not in this record, as they are topics for resolution by an adjustment board rather than a judge. Perhaps a board will conclude that the union did not consent or did not receive essential information before consenting, just as plaintiffs assert. But the board must make that decision and supply any appropriate remedy.").

5

an [employee] acquires and uses fingerprint information for its whole workforce without asking whether the union has consented on the employees' behalf. That's why this dispute must go to an [arbitrator]." *Miller*, 926 F.3d at 904.

It does not matter that *Miller* was decided under the Railway Labor Act, while Dakkota is governed by the LMRA. These federal labor laws apply the same standard. In fact, the U.S. Supreme Court borrowed the preemption standard for the RLA from its LMRA preemption case law. *See Brown v. Ill. Central R.R. Co.*, 254 F.3d 654, 667 n.13 (7th Cir. 2001) (applying *Lingle* to resolve the question of RLA preemption and explaining that, "the [Supreme] Court adopted *Lingle*'s standard for addressing LMRA preemption to resolve claims of RLA preemption"). In addition, the Seventh Circuit has already clarified that—like the RLA—privacy is an ordinary subject of bargaining under the LMRA and the extent of privacy is a condition of employment. *Matter of Amoco Petroleum Additives Co.*, 964 F.2d 706, 709-10 (7th Cir. 1992) (plaintiffs' invasion-of-privacy claims about employer's use of video surveillance were preempted by the LMRA because "privacy in the workplace" is an "ordinary subject of bargaining," and the "the extent of privacy is a condition of employment"; therefore, "a court could not award damages without first construing the collective bargaining agreement and rejecting [the employer's] interpretation of the management-rights clause"). Lest there be any doubt, the language in the RLA that the *Miller* court identified as making the timekeeping methods a mandatory subject of bargaining is highly similar to a provision of the LMRA. *Compare* 45 U.S.C. § 152 First (RLA subsection stating that "[i]t shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions . . . ."),[3] *with* 29 U.S.C. § 174(a)(1) (LMRA subsection stating that

---

[3] Cited at *Miller*, 926 F.3d at 903.

4824-4181-8802

"employers and employees and their representatives . . . shall . . . exert every reasonable effort to make and maintain agreements concerning rates of pay, hours, and working conditions").

We expect that Plaintiff may rely on a decision of an Illinois trial court, which held that *Miller*'s rationale does not apply to the LMRA. *See* Ex. B, *Winters v. Aperion Care Inc.*, Case No. 19-CH-6579 (Feb. 11, 2020 Memorandum and Order). But that decision lacks precedential value and relies on flawed reasoning. In particular, the state court reasoned that *Miller* applied only to the RLA because it relied on 45 U.S.C. § 152, a subsection of the RLA listing the duties of the carrier and employees to negotiate certain disputes. Although the court correctly noted that this subsection does not apply to employers who are not railroads or air carriers, it overlooked the fact that the LMRA has a nearly identical provision that imposes duties to negotiate for the same list of subjects. Accordingly, under *Miller*, these claims should be dismissed.

**B.    Plaintiff's claim is preempted by the Illinois Workers' Compensation Act.**

Alternatively, Plaintiff's BIPA claims should be dismissed because they are preempted by the Illinois Workers' Compensation Act (IWCA), 820 ILCS 305/1 *et seq.*, which provides the exclusive remedy for employment-related injuries, absent limited exceptions not applicable here. *See, e.g.*, *Cooley v. Power Constr. Co., LLC*, 2018 IL App (1st) 171292, ¶ 12 ("Employees that are injured at work do not have a cause of action against their employer, and their exclusive remedy is to apply for benefits under the Workers' Compensation Act."); *Meerbrey v. Marshall Field & Co., Inc.*, 139 Ill.2d 455, 462 (1990) ("while the employer assumes a new liability without fault [under the IWCA], he is relieved of the prospect of large damage verdicts").

Although a court in this district declined to find that the IWCA covers BIPA claims, *Treadwell v. Power Solutions Int'l, Inc.*, 2019 WL 6838940, at *6 (N.D. Ill. Dec. 16, 2019), the Illinois First District appellate court has since granted an interlocutory appeal under Ill. S. Ct. R.

308 to examine whether the IWCA provides the exclusive remedy for similar BIPA claims in *McDonald v. Symphony Bronzeville Park, LLC*. *See* Ex. C (Order Granting Rule 308 Petition); Ex. D (Defendant's Application for Leave to Appeal). As explained below, the Illinois appellate court likely will find that BIPA claims are covered by the IWCA. Accordingly, if the Court does not find these BIPA claims are preempted by the LMRA, then it should find that the IWCA provides the exclusive remedy or, at a minimum, stay the case pending the First District's decision in *McDonald*.

Plaintiff's BIPA claim fits squarely within the IWCA's exclusive remedy provision, which applies to a "statutory right to recover damages from the employer," such as the right provided by BIPA. 820 ILCS 305/5(a). Plaintiff seeks damages pursuant to BIPA against her former employer "as compensation for the injuries caused by [her employer]." (Compl. ¶ 55.) Therefore, she alleges a workplace injury for which the IWCA provides her exclusive remedy unless one of four limited exceptions apply.

To avoid application of the IWCA, Plaintiff must establish that her alleged injury falls within one of four limited exceptions: "that the injury (1) was not accidental; (2) did not arise from [her] employment; (3) was not received during the course of employment; or (4) was not compensable under the Act." *Folta v. Ferro Eng'g*, 2015 IL 118070, ¶ 14. Plaintiff's alleged injury does not fall within these exceptions.

(1) Any injury Plaintiff suffered was accidental. As discussed further below, Plaintiff has not adequately pled that Dakkota acted with any culpability, much less intent, as required to state a claim for a reckless or intentional violation of BIPA. *See infra* Section IV.C. As a result, even assuming the Complaint adequately stated a claim under BIPA, it would be under a negligence theory only. An injury resulting from negligence is, by definition, accidental. *See, e.g., Baylay v.*

8

*Etihad Airways P.J.S.C.*, 222 F. Supp. 3d 698, 704 (N.D. Ill. 2016), ("Both an employee's claim of employer negligence and a claim of employer willful and wanton conduct fall within the definition of 'accidental' and are preempted by the IWCA." (citations omitted)), *aff'd*, 881 F.3d 1032 (7th Cir. 2018); *Lannom v. Kosco*, 158 Ill.2d 535, 541 (1994) (same).

(2–3) Plaintiff alleges that her injury results from the fact that she was required "as a condition of employment" to scan her hand in violation of BIPA. (Compl., ¶¶ 41, 50.) She cannot simultaneously claim that her alleged injuries did not arise from or were not received during her course of employment.

(4) Plaintiff's alleged injury is compensable under the IWCA. An injury is compensable under the IWCA if it occurred "because of a work-related risk or because the employment placed the claimant at risk of exposure exceeding that of the general public." *Diaz v. Ill. Workers' Comp. Comm'n*, 2013 IL App (2d) 120294WC, ¶ 24. Here, Plaintiff has alleged that Dakkota's use of a biometric timekeeping device in the workplace exposed her to "serious and irreversible privacy risks." (Compl., ¶ 5; *see also id.* ¶ 47 ("Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's multiple violations of BIPA alleged herein.").) This is precisely the type of alleged conduct that constitutes a compensable injury under the IWCA. *See Folta*, 2015 IL 118070, ¶ 18 (broadly construing the IWCA's exclusive remedy provision and holding that an injury is compensable when it "aris[es] out of and in the course of the employment").

Accordingly, Plaintiff's exclusive remedy for any BIPA violation exists under the IWCA, and her claims should be dismissed.

### C. Plaintiff failed to adequately plead reckless or intentional conduct.

Plaintiff's claim of intentional or reckless conduct should be dismissed because it is conclusory. In *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612 (N.D. Ill. 2019), a plaintiff asserted a BIPA claim and further alleged that the defendant's violations were "knowing and willful" in an attempt to recover increased damages. *Id.* at 618. Because the only substantive allegation supporting this conclusion was that the railroad violated BIPA, the court dismissed the claim of intentional and reckless conduct without prejudice. *Id.* at 619. This case is no different. Plaintiff makes the conclusory assertion that Dakkota's alleged violations of BIPA were reckless or knowing (and seeks increased damages), but the complaint fails to support this conclusion with any substantive allegation. Under *Rogers*, that claim should be dismissed. *Id.*; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) ("[C]onclusory legal statements . . . do nothing to distinguish the particular case that is before the court from every other hypothetically possible case in that field of law.") (quotation omitted); *but see Rogers v. BNSF Railway Co.*, 2019 WL 5635180, at *5 (N.D. Ill. Oct. 31, 2019) (conclusory allegations of intent were sufficient under Fed. R. Civ. P. 9(b) to survive motion to dismiss a BIPA claim).

### V. Conclusion

For the foregoing reasons, Dakkota respectfully requests that the Court grant its motion to dismiss.

Dated: February 24, 2020

Respectfully submitted,

**DAKKOTA INTEGRATED SYSTEMS, LLC**

By: */s/ Melissa A. Siebert*

Melissa A. Siebert (*masiebert@shb.com*)
Erin Bolan Hines (*ehines@shb.com*)
Jonathon M. Studer (*jstuder@shb.com*)

10

SHOOK, HARDY & BACON LLP
111 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 704-7700
Fax: (312) 558-1195

4824-4181-8802

# **CERTIFICATE OF SERVICE**

I, Jonathon M. Studer, an attorney, hereby certify that on February 24, 2020, I caused the foregoing to be filed with the clerk of court using the Court's CM/ECF system, which will serve electronic notice upon all parties of record.

                                                          */s/ Jonathon M. Studer*