UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAVEN FOX, on behalf of herself and all other similarly situated individuals, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 19 C 2872 |
| DAKKOTA INTEGRATED SYSTEMS, LLC, | ) ) ) ) | Judge Charles P. Kocoras |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant Dakkota Integrated Systems, LLC's ("Dakkota") motion to dismiss Plaintiff Raven Fox's ("Fox") class action complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court severs and remands Count I of Fox's complaint sua sponte, and grants Dakkota's motion to dismiss.

## STATEMENT

For purposes of this motion, the Court accepts as true the following facts from the complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Fox's favor. *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014).

Plaintiff Fox is an Illinois resident who worked as a Team Lead for Dakkota. Dakkota is a limited-liability company organized under the laws of the State of

Michigan, with its principal place of business in Holt, Michigan. Dakkota is an automotive supplier that manages the assembly and sequencing of integrated automotive interiors for original equipment manufacturers and has locations throughout the Midwest, including Chicago, Illinois.

Fox worked for Dakkota in a Chicago facility from February 2012 until January 28, 2019. As a term of her employment, Fox and other employees had to scan their hands to track their work hours. Dakkota stored Fox's hand geometry data in its employee database(s).

While Fox had to grant Dakkota access to use her hand geometry, Dakkota never informed Fox of the specific limited purposes or lengths of time that her biometric data (*i.e.*, her hand geometry) would be stored, collected, used, or disseminated. Fox was also not informed of any biometric data retention policy developed by Dakkota, told whether Dakkota planned to permanently delete the sensitive information specific to Fox, or provided with a release form through which she could consent to Dakkota's collection of her biometric data.

Based on these events, Fox filed this putative class action lawsuit in the Circuit Court of Cook County, alleging that Dakkota violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS §§ 14/1 *et seq*. Specifically, Fox alleges claims for (1) Dakkota's failure to institute, maintain, and adhere to a publicly available retention schedule in violation of BIPA Section 15(a); (2) Dakkota's failure to obtain informed, written consent before obtaining biometric information in violation of BIPA

2

Section 15(b); and (3) Dakkota's disclosure of biometric information before obtaining consent in violation of BIPA Section 15(d). Fox seeks statutory damages in the amount of $1,000 for each negligent violation, and $5,000 for each reckless violation of the abovementioned BIPA Sections.

Dakkota removed the case to federal court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). On February 24, 2020, we denied Fox's motion to remand, which argued that CAFA's amount-in-controversy requirement was not met. Dakkota now moves to dismiss Fox's claims under Federal Rule of Civil Procedure 12(b)(6).

## I. Subject-Matter Jurisdiction

As a preliminary matter, we note that the Seventh Circuit's recent decision in *Bryant v. Compass Group USA Inc.*, brings into question our subject-matter jurisdiction over Count I in Fox's Complaint (titled "First Cause of Action."). 2020 WL 2121463 (7th Cir. 2020). In *Bryant*, the Seventh Circuit resolved an important issue that has divided courts in our District for the past three years: what BIPA violations are sufficiently substantive to qualify as an injury for purposes of standing Article III of the U.S. Constitution ("Article III").

Applying Justice Thomas's rubric from his concurrence in *Spokeo Inc., v. Robbins*, 136 S. Ct. 1540, 1551 (2016), the *Bryant* Court distinguished between the duty owed under BIPA Section 15(b)—requiring that private entities obtain informed consent to collect biometric information—and that owed under Section 15(a), requiring

3

private entities to make publicly available a data retention schedule and guidelines for permanently destroying collected biometric identifiers and information. 2020 WL 2121463, at *6.

The *Bryant* Court found that the obligations under the former are owed to private individuals, and therefore, a violation of BIPA Section 15(b) invades a plaintiff's personal privacy right to consider the terms under which her biometric information is collected and used. *Id.* In contrast, the obligations under BIPA Section 15(a) are owed to the public generally. Therefore, a violation of that Section does not invade a plaintiff's personal privacy rights in a concrete manner. Accordingly, the *Bryant* Court held that a violation of Section BIPA Section 15(b) is a substantive violation that creates a concrete and particularized Article III injury, whereas a violation of BIPA Section 15(a) is procedural and does not create such an injury. *Id.* at *7.

Applying the *Bryant* Court's holding, we conclude that we lack subject-matter jurisdiction over Count I of Fox's complaint. In this Count, Fox alleges that Dakkota failed to institute, maintain, and adhere to a publicly available retention schedule in violation of BIPA Section 15(a). But such a violation does not create a concrete injury as required under Article III. Therefore, Fox lacks standing to bring this claim in federal court. The Court accordingly severs and remands Count I (titled "First Cause of Action") of Fox's complaint back to state court for lack of subject-matter jurisdiction. *See The Northern League, Inc. v. Gidney*, 558 F.3d 614, 614 (7th Cir. 2009) (finding remand for lack of subject-matter jurisdiction is "a step proper at any time").

## II. Dakkota's Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to raise its right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678. Dakkota moves to dismiss Fox's complaint, arguing that her BIPA claims are preempted by the Labor-Management Relations Act ("LMRA").

The LMRA preempts "claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394

(1987) (quoting *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). "If the resolution of a state law claim depends on the meaning of, or requires interpretation of, a collective-bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute." *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 499 (7th Cir. 1996); *see also Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 797 (7th Cir. 2013) (section 301 preemption "covers not only obvious disputes over labor contracts, but also any claim masquerading as a state-law claim that nevertheless is deemed 'really' to be a claim under a labor contract").

Citing *Miller v. Southwest Airlines Co.*, 926 F.3d 898 (7th Cir. 2019), Dakkota contends that Fox's BIPA claims are preempted because they require the Court to interpret her union's collective-bargaining agreement ("CBA") with her employer. The Court agrees.

In *Miller* the Seventh Circuit considered a similar preemption argument under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 181 *et seq.* 926 F.3d 898. The plaintiffs alleged that the defendants implemented biometric timekeeping systems without the plaintiffs' consent, did not publish protocols as required by BIPA, and improperly disclosed the plaintiffs' biometric information. *Id.* at 901.

On appeal, defendants argued that plaintiffs consented to the use of their biometric identifiers through the collective-bargaining agreements' management rights clauses. *Id.* The Seventh Circuit rejected plaintiffs' argument that their union could not qualify as an "authorized agent" that could provide consent and receive notices

under BIPA, noting that "[n]either the statutory text nor any decision by a state court suggests that Illinois wants to exclude a collective-bargaining representative from the category of authorized agents." *Id.* at 903; see 740 ILCS §§ 14/15(b), (d) (requiring entities collecting biometrics to provide notice to and receive release from "the subject or the subject's legally authorized representative"). Therefore, *Miller* found that the RLA preempted the plaintiffs' claims, which involved "retention and destruction schedules for biometric data, and whether [the defendants] may use third parties to implement timekeeping and identification systems," as well as whether the management rights clauses granted authority to the unions to consent to the collection and use of biometric data. 926 F.3d at 903.

*Miller* governs the Court's analysis of the preemption issue here because the RLA's preemption standard is "virtually identical to the pre-emption standard the Court employs in cases involving [Section] 301 of the LMRA." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994). Dakkota contends that Fox was a member of a union that negotiated successive CBAs on her behalf. Those agreements made Fox's union the employee's sole agent for purposes of collective-bargaining and granted the employer broad managerial rights. Accordingly, Dakkota argues that Fox's BIPA claims are preempted because they require the Court to interpret whether the employer's

7

managerial rights under the CBA encompass collection of biometric information.[1] *Miller*, 926 F.3d at 903.

Fox argues that *Miller* is distinguishable because she is not challenging Dakkota's decision to use a biometric timekeeping device and does not object to Dakkota's right or ability to use such device. But that distinction is irrelevant.

Fox's claims allege that Dakkota violated BIPA by failing to obtain written consent and disclosing biometric information without consent. To determine whether Dakkota violated BIPA in collecting and disclosing Fox's biometric information, we must determine whether Fox's union consented to the collection and disclosure on her behalf. Thus, it is impossible to "litigate a dispute about how an [employer] acquires and uses fingerprint information for its whole workforce without asking whether the union has consented on the employees' behalf." *Miller*, 926 F.3d at 904.

Fox alternatively argues that *Miller* is inapplicable because this case is governed by the LMRA while *Miller* was decided under the RLA. That argument is also to no avail. The RLA preemption standard is "virtually identical to the pre-emption standard the Court employs in cases involving [Section] 301 of the LMRA." *Hawaiian Airlines*, 512 U.S. at 260. Therefore, *Miller* governs the Court's resolution of the preemption question here.

---

[1] In the alternative, Dakkota argues that Fox's claims are preempted by the Illinois Workers Compensation Act. Given our finding that Fox's claims are preempted by the LMRA, we decline to reach this unsettled question of state law.

Because Fox's claims require interpretation of the CBA, the Court finds those claims preempted by the LMRA. The Supreme Court has indicated that a preempted state law claim "must either be treated as a [Section] 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

To treat its claim under Section 301, an employee must exhaust administrative remedies before suing in federal court unless certain exceptions apply. *See McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 616 (7th Cir. 2001). One such exception exists where an employee shows that resorting to the CBA's grievance procedure would be futile. *Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 715 (7th Cir. 2013).

Although Fox attempts to argue that any attempts to exhaust administrative grievance procedures would be futile, that cursory assertion is insufficient to properly raise the issue. *See McLeod*, 258 F.3d at 617 (holding that the plaintiffs' failure to exhaust could not be excused "because [their] 'mere unsupported assertion of futility was insufficient to raise the issue properly'"). A plaintiff asserting futility "must put the grievance procedure to the test." *Romano v. Bd. of Educ. for Bloom Twp. High Sch. Dist. #206*, 2016 WL 2344581, at *4 (N.D. Ill. 2016). The Court cannot determine that exhaustion of the CBA's grievance procedure would have been futile on the information before it.

Finally, it matters not that Fox is no longer an employee at Dakkota and is therefore not a member of the union. The simple fact of the matter is that Fox has not

shown that she made any attempts to exhaust administrative procedures when she had an opportunity to do so.

## **CONCLUSION**

For the reasons mentioned above, the Court severs and remands Count I and grants Dakkota's motion to dismiss the remaining counts. It is so ordered.

Dated: 05/26/2020

_____
Charles P. Kocoras
United States District Judge